WILLIAM J. A. BURNS, DEFENDANT IN ERROR, v. THE DELAWARE AND ATLANTIC TELEGRAPH AND TELEPHONE COMPANY, PLAINTIFF IN ERROR.

OWEN DONAHUE, DEFENDANT IN ERROR, v. THE DELAWARE AND ATLANTIC TELEGRAPH AND TELEPHONE COMPANY, PLAINTIFF IN ERROR.

Argued March 3, 1904—Decided November 14, 1904.

1. It is one of the duties of an employer to exercise reasonable care that the place in which he sets his servant to work, and the system or method adopted by the employer for the doing of the work, shall be reasonably safe for the servant and free from latent dangers known to the master or discernible by an ordinarily prudent master in the circumstances.

2. Where there is evidence from which the jury may reasonably find that the injured servant had no knowledge of the latent danger that necessitated the use of certain precautions for his safety, it cannot be held as a conclusion of law that because the servant knew of the absence of the precautions he thereby assumed the risk of injury resulting to him from their absence.

3. It is not merely the physical surroundings of the servant that must be obvious to him in order that he may be held to have assumed the risks arising therefrom, but it must be obvious to him, or at least to an ordinarily prudent servant under the circumstances, that there is danger to him in such a situation.

4. The rule that the duty of a master with respect to care as to the tools and appliances furnished for his servant's work is limited to such as are in fact supplied by the master, has no applicancy to the failure of the master to supply appliances needed not for the work itself, but solely to protect the servant against latent dangers arising out of the work.

5. The duty of the master to exercise care for the safety of the servant cannot be evaded by the employment of others for its performance. The persons so employed are not fellow-servants engaged in common employment with the servant for whose safety the care is to be exercised.

6. The question whether a witness has such special knowledge or experience as to qualify him to give opinion evidence is a question of fact for the determination of the trial court, whose finding is not reviewable on writ of error if there be any legal evidence to support it.

On writs of error to the Supreme Court.

For the plaintiff in error, *Norman Grey.*

For the defendants in error, *John W. Wescott* and *Ralph W. E. Donges.*

The opinion of the court was delivered by

PITNEY, J. These were two actions of tort brought to recover damages for personal injuries sustained by the plaintiffs below while in the employ of the defendant company. They were tried together and resulted in a verdict and judgment in favor of each plaintiff. Errors at the trial are asserted as ground for reversal.

Plaintiffs were laboring men, and with others were engaged in attending reels from which copper wires were being un-

wound, while at the same time another gang of men were stringing them upon poles of the defendant company. There were ten reels, each of which carried a single coil of wire. The outer ends of the wires were attached by snaphooks to a device known as a "running-board," to which in turn was attached a rope by means of which a team of horses drew the ten wires simultaneously from the reels. These wires were bare, and, of course, were normally "dead" wires. The defendant's line of poles carried two sets of cross-arms, each arm being designed to carry ten wires. The ten wires that were being unreeled were being placed upon the upper set of cross-arms. From the reels the wires passed to the cross-arm upon a pole nearby and thence along the line of poles. As each successive pole was reached and passed by the team the wires were detached from the running-board, lifted over the cross-arm by the polemen, or "climbers," and then once more attached to the running-board. Thus the strain on the wires was intermittent. The lower cross-arms carried eight telephone wires, previously strung, and running parallel to the wires that were being strung at the time in question. Between three hundred and fifty and four hundred feet from the place where the plaintiffs were working the wires that were in process of being unreeled passed above a trolley feed-wire, the elevation of which was below the lower cross-arms of the telephone line. It was in evidence that between the place where the plaintiffs worked and the trolley line the line of wires passed through trees or woods that obscured the plaintiffs' view of all beyond. As to the cause of the accident, the evidence tended to show that one or more of the new wires broke or sagged and thus came in contact with the trolley wire, deriving from it a strong current of electricity that was conveyed along the new wires to the plaintiffs, who were shocked and seriously burned thereby. The team was about thirty-five hundred feet from the reels at the time. The evidence tended to show that the current proceeded from the trolley wire and to exclude the theory that it could have proceeded from any other source. The evidence on the part of the plaintiffs tended to show that a wire or

wires were permitted in the ordinary progress of the work to sag and come in contact with the trolley wire. Upon the part of the defendant the insistment was that one of the wires broke while being drawn from the reel; but as it was at least disputable whether the breaking, if it occurred, was occasioned by any negligence of the plaintiffs or their fellow-workmen, it makes little difference for present purposes whether the wire broke or not. If it broke without negligence of the workmen, the jury had a right to treat the breaking as an ordinary incident of the method or system adopted by the defendant in the prosecution of its work.

The negligence attributed by the plaintiffs to the defendant was the failure to take precautions to prevent the powerful current of the trolley wire from being communicated to the persons of the employes. The precautions suggested by the evidence were a sling or basket made of rope, to be suspended over the trolley wire in order to prevent the telephone wires from dropping at that point, and, as a further precaution, the use of rubber gloves for the hands of the workmen, or a board platform, or wagon, upon which they might stand. It appeared that the reels were placed upon the ground; that the earth at this point was damp and muddy, and that this rendered the men more liable to be injured by the escape of electric current from the wire through their bodies to the ground. The rope sling or basket, of course, would tend to prevent the wires upon which they were working from becoming charged with electricity; the gloves or platform would tend to prevent the men from receiving a serious shock if the wires should become charged.

There was a motion for nonsuit and also a motion to direct a verdict in favor of the defendant, both of which were refused. The grounds upon which these motions were based, so far as necessary to be now mentioned, are (1) absence of evidence to show negligence on the part of the defendant; (2) or to show knowledge on the part of the defendant that the telephone wires were crossing a live wire; (3) or to show that the absence of boards and gloves was the proximate cause

of the accident; (4) or to show that it was the usual custom in the business for employing companies to supply such devices to men working under the circumstances that surrounded the plaintiffs.

A similar question was raised by defendant's fourth request to charge, which was refused. The proposition thus rejected was that "it was no portion of any duty of defendant to supply gloves and boards or a platform under the circumstances in this case."

It is one of the duties of an employer to exercise reasonable care that the place in which he sets his servant to work, and the system or method adopted by the employer for the doing of the work, shall be reasonably safe for the servant and free from latent dangers known to the master or discernible by an ordinarily prudent master in the circumstances. *Western Union Telegraph Co.* v. *McMullen*, 29 *Vroom* 155.

That the duty of the master to exercise care with respect to the place of working extends to the system or method of arranging the work is established in this state. *Belleville Stone Co.* v. *Mooney*, 31 *Vroom* 323; 32 *Id.* 253.

In the present case the jury might reasonably find from the evidence that the danger of contact between the wires at which the plaintiffs were working and the trolley wire was a latent danger, unknown to the plaintiffs. They severally denied that they knew there was any danger connected with the work, and it was shown that they were inexperienced in the work of line construction. They were not linemen and had no knowledge or experience of electricity. Even had they known their wires were to be carried across a trolley wire, it was not necessarily obvious to them that there was a probability of contact with the latter wire. Again, an obvious probability of such contact would not necessarily import notice to the plaintiffs of an obvious danger to them—*first,* because even on defendant's own evidence the jury had a right to find that not all trolley wires carry current sufficiently powerful to injure a human being; and *secondly,* because there is much evidence in the case indicating that even a powerful current might be

harmless to men handling wires except where their feet were placed upon damp ground, and there is nothing to show that the plaintiffs knew that the dampness of the ground at all imperiled their safety.

The jury had a right to find that the entire situation, as well as the danger that was latent in the situation, was known to defendant's agents, who acted for it in laying out the work and who represented it in respect of the duty to exercise care for the safety of the plaintiffs, or that it would have been known to an ordinarily prudent employer under the like circumstances.

There was likewise abundant evidence from which the jury might reasonably infer that ordinarily prudent employers, under such circumstances, employed either a guard-wire, or a rope sling or basket, to prevent the wires upon which employes were working from dropping upon a live wire, carrying a current of high power, and that, as an additional precaution against danger to the men in case of such contact, it was customary to use rubber gloves or a board platform, or, as a substitute for the latter, to place the men upon a wagon while employed in such work.

It is urged here that the evidence as to the failure to supply rubber gloves and a guard-wire was irrelevant and immaterial to the issue as framed, since the plaintiffs' declarations counted solely upon the absence of boards or a platform for the plaintiffs to stand upon. The criticism ignores some of the averments of the declarations; but, without spending time upon the point, it is sufficient to say that the objection of variance was not taken at the trial. If it had been, an amendment would doubtless have been applied for and allowed. As it appears from the testimony returned with the bills of exception that both parties went fully into the question of the propriety and necessity of guard-wires and gloves, the pleadings will be treated in this court as amended, if necessary, so as to be applicable to the issues that were actually tried.

For these reasons, we think the trial court properly denied the motion to nonsuit and the motion to direct a verdict in favor of the defendant.

To return now to the fourth request to charge that "it was no portion of any duty of defendant to supply gloves and boards or a platform, under the circumstances in this case." It is suggested here that because the plaintiffs knew that no gloves, boards or platform had been supplied and voluntarily continued in the employment, they should not have been permitted to recover for injuries arising from the absence of such precautions, and that for this reason the refusal of the request just quoted was erroneous.

But it is entirely plain from the context that the phrase "under the circumstances in this case" was intended to mean, and was understood by the trial judge to mean, the physical circumstances that bore upon the existence or non-existence of a necessity for such precautions. During the trial defendant's counsel and the witnesses called by him repeatedly used the phrase "existing conditions" and "existing circumstances" in the sense just indicated. As there was abundant evidence to show that under such circumstances reasonable prudence dictated the employment of such precautions as gloves and boards or a platform, the trial judge could not properly accede to a request that, if complied with, would have prevented the jury from considering the omission of such safeguards as any breach of duty on the part of the defendant.

We cannot treat this request as intended to include the proposition that, because the plaintiffs knew that neither gloves, boards or platform had not been supplied, they assumed any risk of danger resulting to them from the absence of such precautions. And this for several reasons. The assumption of risk is not mentioned in the request, but was dealt with in a separate request. The question of the master's duty with respect to care for the servant's safety is distinct from the question of the servant's assumption of risks, whether those ordinarily incident to the employment or those obviously resulting from the master's breach of duty. The request under consideration directed the attention of the trial judge solely to the question of the master's duty. Moreover, the fact that the plaintiffs knew that no gloves, boards or platform had been

furnished cannot be held to excuse the master from furnishing them if required in the exercise of reasonable care for the servant's safety. The jury might properly find from the evidence that the plaintiffs had no knowledge of the danger that necessitated the use of such precautions, and that the defendant, on the other hand, either had such knowledge or, if reasonably careful, would have possessed it. It is not merely the physical surroundings of the servant that must be obvious to him in order that he may be held to have assumed the risks arising therefrom, but it must be obvious to him, or, at least, to an ordinarily prudent servant, under the circumstances, that there is danger in such a situation. It is his voluntary acceptance of, or persistence in, an employment that involves personal hazard to him that debars his action; the theory of the law being that his wages have been fixed in view of the hazard. But where the danger is unknown to the servant, he cannot be held to have voluntarily assumed it, although the physical surroundings that create the danger are known to him. And so the known absence of safeguards or precautions cannot prevent a recovery where the danger that renders them necessary is unknown to the injured servant. 4 *Thomp. Negl.* (*new ed.*), §§ 4608, 4610, 4640. Thus in *Van Sleenburgh* v. *Thornton,* 29 *Vroom* 160, the negligence for which the master was held liable was the failure to brace the sides of a sewer trench in which the plaintiff was working. The plaintiff, of course, knew that the trench was not braced. But the defendant's representative knew, while the plaintiff did not, that there was danger of caving from the existence of a parallel trench that had been filled up. (See this case commented on in *Regan* v. *Palo,* 33 *Vroom* 35, and *Curley* v. *Hoff,* 33 *Id.* 760.) So in *Smith* v. *Erie Railroad Co.,* 38 *Id.* 636, 644, it was insisted that since the plaintiff knew there was a defect in the railroad track he assumed the risk of a derailment caused by such defect. But this court said: "It was far from obvious to one traveling upon the train that the roughness of the track indicated a weakness sufficient to cause derailment. The trial judge therefore could not say, as a matter

of law, that the plaintiff assumed the risk of the injury that he received, and so it was, at best, a question for the jury to determine whether the special danger was known to the plaintiff or was so obvious that he ought to have known of it." In a multitude of other cases in our courts the principle is impliedly recognized, if not distinctly declared, that it is the danger that must be known or obvious and not merely the physical situation in order to charge the injured servant with assumption of an obvious risk. The doctrine of "latent dangers" is largely grounded upon this distinction. *Paulmier* v. *Erie Railroad Co.,* 5 *Vroom* 151; *Smith* v. *Irwin,* 22 *Id.* 507; *Foley* v. *Jersey City Electric Light Co.,* 25 *Id.* 411; *New York, Susquehanna and Western Railroad Co.* v. *Marion,* 28 *Id.* 94; *Electric Co.* v. *Kelly, Id.* 100; *Western Union Telegraph Co.* v. *McMullen,* 29 *Id.* 155; *Chandler* v. *Coast Electric Railway Co.,* 32 *Id.* 380; *Johnson* v. *Devoe Snuff Co.,* 33 *Id.* 417; *Dillenberger* v. *Weingartner,* 35 *Id.* 292; *Christenson* v. *Lambert,* 38 *Id.* 341.

It is suggested that the duty of a master with respect to care as to the tools and appliances furnished for his servant's work is limited to such as are in fact supplied by the master. But this has no applicancy to the failure of the present defendant to supply gloves, boards or a platform. These articles, if furnished, would have been not tools and appliances for the work that the plaintiffs were doing but rather safeguards against the dangers that arose out of the work. In the absence of such dangers the plaintiffs could perform the work at which they were set just as well without gloves, boards or platform as with them. See *Belleville Stone Co.* v. *Mooney,* 32 *Vroom* 254. It was not the exigencies of the work but the latent danger that inhered in the work and of which the jury have found the plaintiffs were ignorant, that necessitated the use of gloves, boards or a platform.

And so, in any and every aspect, we think the fourth request to charge was properly refused.

It is argued that if there was any negligence in not furnishing boards, rubber gloves or guard-wires, it was the neg-

ligence of one Naylor, a fellow-servant of the plaintiffs, and the defendant is not liable for his negligence. This point was raised by one of the requests to charge that was overruled. *Knutter* v. *Telephone Co.,* 38 *Vroom* 646, is cited in support of it. But in that case the foreman, through whose negligence, as was claimed, the plaintiff was injured, was in respect of the act that produced the injury employed merely as a fellow-servant and not in the performance of any duty that had to do with the master's precautions for the safety of its employes. As has been frequently declared in this court, the test is whether the negligent act or omission was in discharge of the master's or the servant's duty. It is for the master to make preparation for the general employment, and what he does in establishing a system of work and furnishing the plant, appliances and place of work, is done in this behalf. It is for the servants to carry on the employment when the master has thus prepared for it. The duty of the master to exercise care for the safety of the servant cannot be evaded by the employment of others for its performance. The agent thus employed is a "vice principal," and the question is whether he, in truth, exercised due care. *Steamship Co.* v. *Ingebregsten,* 28 *Id.* 400; *Van Steenburgh* v. *Thornton,* 29 *Id.* 160; *Maher* v. *Thropp,* 30 *Id.* 186; *Hustis* v. *Banister Co.,* 34 *Id.* 465; *Smith* v. *Erie Railroad Co.,* 38 *Id.* 636.

And so, in the present case, whether it was the duty of Naylor, or of some other agent of the employer, to make those preparations that the situation and circumstances required for the conduct of the general employment with reasonable safety for the men, the person doing or assuming to do that work for the master was not, within the meaning of the rule, a fellow-servant engaged in common employment with the plaintiffs.

Exception was taken to certain testimony of the plaintiffs tending to show the custom of other employers, on the ground that the witnesses called upon this point were not shown to have sufficient experience to qualify them to speak as experts upon the question. We think, however, there was sufficient

evidence of experience to justify the action of the trial court in admitting them to express opinions. The question whether a witness has such special knowledge or experience as to qualify him to give opinion evidence is a question of fact for the determination of the trial court, whose finding is not reviewable on writ of error if there be any legal evidence to support it. *State* v. *Arthur, ante p.* 425, and cases there cited.

It is assigned for error that the trial judge admitted evidence over objection to show that the defendant, after the injury to the plaintiffs, furnished gloves and boards for the protection of their men. But the bills of exception show that the defendant was responsible for the introduction of this evidence.

The remaining points raised have been examined and found unsubstantial.

The judgments under review should be affirmed.

DIXON, J. (dissenting). The testimony in these cases, I think, presented for decision these three questions:

*First.* Were the plaintiffs injured by an electric current transmitted to the wires which they were handling from a trolley wire over which those wires were being strung?

*Second.* Was the defendant, the employer of the plaintiffs, chargeable with knowledge that such injury was probable?

*Third.* Were the plaintiffs, notwithstanding the exercise of due care on their part, ignorant that such injury was probable?

A finding on all these questions favorable to the plaintiffs would necessarily result in establishing their right to compensation from the defendant, but a finding on any of them adverse to the plaintiffs would necessarily result in the denial of such right. If the first question were negatived, then the injury did not occur in the defendant's service; if the second were negatived, then the defendant was not guilty of negligence; if the third were negatived, then the plaintiffs assumed the risk.

In a case thus conditioned the furnishing or non-furnishing of rubber gloves for the hands, or of a wooden platform for the feet of the workmen was legally unimportant; it merely affected the degree of risk. If the probability that the current might be thus transmitted was patent to the employer, but not to the workmen, then he could not relieve himself from responsibility by providing such means of lessening the injury; and if that probability was patent to the workmen, then they assumed the risk of it under all conditions known to them, including, of course, the absence of gloves and platform.

Now, as I understand the charge of the court at the trial of these cases, it was to the effect that, even if the jury should find adversely to the plaintiffs on either the second or the third of the questions above stated, yet they might conclude that under the circumstances of the case a duty rested on the defendant to furnish gloves or a platform as a customary precaution, and they might base a verdict for the plaintiffs on the non-performance of that duty. In order to preclude such a verdict the defendant's fourth request was made, for a distinct instruction, "that it was no portion of any duty of defendant to supply gloves and boards or a platform, under the circumstances of this case." After the charge which had been given to the jury, it was erroneous to refuse this instruction. However humane it might have been for the defendant to provide such safeguards, it was not its legal duty to do so.

*For affirmance*—THE CHANCELLOR, GARRISON, FORT, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY. 10.

*For reversal*—DIXON. 1.