428 P.2d 625

Bennie TAPIA and Western Casualty and Surety Company, Plaintiffs-Appellees,

v.

PANHANDLE STEEL ERECTORS COMPANY and Joe G. Myszkowski, Defendants-Appellants.

No. 8167.

Supreme Court of New Mexico.
May 8, 1967.
Rehearing Denied June 26, 1967.

Sutin & Jones, Albuquerque, for appellants.

Lorenzo A. Chavez, Melvin L. Robins, Albuquerque, for Bennie Tapia.

Toulouse, Ruud, Gallagher & Walters, J. E. Casados, Albuquerque, for Western Casualty.

## OPINION

NOBLE, Justice.

Panhandle Steel Erectors Company (hereafter termed Panhandle) and Joe G. Myszkowski, defendants below, have appealed from a $40,000 judgment for personal injuries suffered by Bennie Tapia, plaintiff below, entered pursuant to a jury verdict.

Tapia fell from a ladder and was injured while working as a welder on a building being constructed for the University of New Mexico. His employer, Underwood-Testman Company, was the project's general contractor; Panhandle was a subcontractor; and defendant Myszkowski was Panhandle's employee. There was testimony that 2 x 4 boards were used as spacers between pre-cast concrete beams set in place by Panhandle in the construction of the building's dome. Tapia alleged that Myszkowski, while working for Panhandle, negligently failed to secure one such 2 x 4, and that this board pulled loose when Tapia took hold of it as he was moving up a ladder to the roof, causing him to lose his balance and fall.

The first point is directed to the trial court's denial of motions for a directed verdict made by the defendants at the close of plaintiff's case and again at the conclusion of all the evidence. Argument under this point is subdivided into five contentions, three of which attack the verdict as being unsupported by substantial evidence. The thrust of defendants' argument here is (1) that there was no evidence Myszkowski actually put the 2 x 4 between the beams, but (2) assuming he did, that this did not cause Tapia to fall, and (3) in conjunction with the question of causation, that the

evidence is undisputed that Tapia's own conduct was the sole cause of his fall.

Proof that Myszkowski put into place the particular 2 x 4 claimed to have caused the fall comes solely from Tapia's testimony. Defendants argue that his testimony simply does not constitute substantial evidence.

█ Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, Wilson v. Employment Sec. Comm'n, 74 N.M. 3, 389 P.2d 855, and has been defined as evidence of substance which establishes facts from which reasonable inferences may be drawn. Brown v. Cobb, 53 N.M. 169, 204 P.2d 264. On appeal, all disputed facts are resolved in favor of the successful party, all reasonable inferences indulged in support of the verdict, all evidence and inferences to the contrary disregarded, and the evidence viewed in the aspect most favorable to the verdict. Totah Drilling Co. v. Abraham, 64 N.M. 380, 328 P.2d 1083; State ex rel. Magee v. Williams, 57 N.M. 588, 261 P.2d 131; Sessing v. Yates Drilling Co., 74 N.M. 550, 395 P.2d 824; Witt v. Marcum Drilling Co., 73 N.M. 466, 389 P.2d 403; Blancett v. Homestake-Sapin Partners, 73 N.M. 47, 385 P.2d 568. Nor does the fact that there may have been contrary evidence which would have supported a different verdict permit us to weigh the evidence. Renehan v. Lobato, 55 N.M. 532, 237 P.2d 100; State ex rel. Reynolds v. Lewis, 74 N.M. 442, 394 P.2d 593. Viewing the evidence in that aspect, it meets the substantial evidence test.

There appears to be no dispute as to the method and sequence of the work in the construction of the dome where Tapia was injured. Myszkowski and other Panhandle employees, using a crane, placed pre-cast concrete beams between the outer ring or wall of the building and an elevated dome platform at its center. Panhandle's employees precisely located and then spot-welded the beams at both ends to hold them in place. Later Myszkowski completed the welding. Underwood-Testman's employees, including Tapia, followed to weld lengths of angle iron on top of each pre-cast beam. After this angle iron had been securely welded, a third group of workers also employed by Underwood-Testman bolted 2 x 4 or 2 x 6 beams and plywood forms to the angle iron. Finally, concrete was poured into the forms to mold the ceiling. Thus, after the first few pre-cast beams were set in place, each group of workers followed in their turn. Tapia's crew followed immediately behind Myszkowski, who, at the time of the accident was the only Panhandle welder on the job. Thus, Tapia's testimony on direct examination was that the 2 x 4 that came loose when he took hold of it was placed between the beams by Joe Myszowski.

█ Tapia's testimony on direct and cross-examination is subject, at least, to being interpreted as containing certain inconsistencies. Defendants argue that his cross-examination contradicts the direct testimony as to whether Myszkowski in fact set any pre-cast beams on the day of the accident or placed any 2 x 4's between them. Defendants contend that because Tapia admitted on cross-examination that he did not actually see Myszkowski place the 2 x 4 which he says caused his fall, this nullifies his testimony on direct and that a witness' testimony can be no stronger than that given on cross-examination. We are not required to determine whether there are in fact contradictions in Tapia's testimony. If there are, they only affect the credibility of the witness. It has been firmly established in this jurisdiction that only the trier of the facts may weigh the testimony, determine the credibility of witnesses, reconcile inconsistent or contradictory statements of a witness, and say where the truth lies. Romero v. H. A. Lott, Inc., 70 N.M. 40, 369 P.2d 777; Montano v. Montoya-Saavedra, 70 N.M. 332, 373 P.2d 824; Sauter v. St. Michael's College, 70 N.M. 380, 374 P.2d 134.

Our review of the record discloses testimony that Myszkowski was welding on the day of the accident; that he was the only

one working ahead of Tapia; and that he was the workman who separated the beams with the 2 x 4's.

■ We agree with Renfro v. J. D. Coggins Co., 71 N.M. 310, 378 P.2d 130, that a permissible inference must reasonably be based upon facts established in evidence and not upon mere conjecture or other inferences. In the light of the above testimony, however, we cannot say that the jury could not reasonably infer that Myszkowski inserted the 2 x 4 which later pulled loose.

Likewise, we find no merit to the contention that the court erred in denying the motions for a directed verdict because the plaintiff's fall was caused solely by his own conduct in slipping off the ladder. Of course, the fall resulted from Tapia slipping off the ladder. The real question is, what caused him to slip? He testified that the ladder did not reach completely to the top of the beam, so he took hold of the 2 x 4 while he stepped from the ladder to the roof, and that the 2 x 4 pulled loose causing him to slip, lose his balance, and fall to the ground. We find no failure of evidence which required the trial court to direct a verdict.

■ Nor can we adopt defendants' fourth contention in support of its motion seeking a directed verdict, that the evidence did not support the jury's conclusion that Myszkowski's conduct constituted negligence even assuming he did place the 2 x 4 between the beams. Myszkowski's own testimony acknowledges he was aware other workers would be coming up on the dome; that it was necessary for him to leave the place so as not to be a hazard to anyone else; and that a loose board would be dangerous. Quoting § 284, Restatement of the Law of Torts in Krametbauer v. McDonald, 44 N.M. 473, 104 P.2d 900 (1940), this court has defined negligent conduct to be "an act which the actor as a reasonable man should realize as involving an unreasonable risk of causing an invasion of an interest of another." Questions of negligence are generally questions for the jury. Hole v. Womack, 75 N.M. 522, 407 P.2d 362 (1965). We cannot say the jury must have erred; nor can we here say the accident and resulting injury were beyond the range of foreseeability. See Tipton v. Clower Drilling Co., 67 N.M. 388, 356 P.2d 46 (1960).

What has been said disposes of defendants' argument that there is no basis in the evidence upon which to predicate liability of the defendants.

■ Defendants next assert they owed Tapia no duty and, accordingly, they cannot be held liable for his injury. The rule appears to be well established that:

"Where two or more independent contractors, or a general contractor and one or more subcontractors, are engaged in work on the same premises, it is the duty of each contractor, in prosecuting his work, to use ordinary and reasonable care not to cause injuries to the servants of another contractor; and an employee of one contractor may recover against another contractor for injuries caused by the negligence of the latter contractor, or of his employees acting within the scope of their employment, in the performance of a duty owed by such contractor to the injured employee. * * *"

57 C.J.S. Master & Servant § 610, p. 382. Rumsey v. Schollman Bros. Co., 156 Neb. 251, 55 N.W.2d 668; Miller v. Brunson Const. Co., 250 S.W.2d 958 (Mo.1952); Smith v. St. Joseph Ry., Light, Heat & Power Co., 310 Mo. 469, 276 S.W. 607; Kiehling v. Humes-Deal Co., 16 S.W.2d 637 (St.Louis Mo. Ct.App.1929); Ziraldo v. W. J. Lynch Co., 365 Ill. 197, 6 N.E.2d 125; Hayden v. Paramount Prod., 33 Cal.App.2d 287, 91 P.2d 231; Annot., 38 A.L.R. 403, 471. From this, we conclude the trial court did not err in refusing to direct a verdict for the defendants.

Defendants' next eight points contest the propriety of certain instructions given and the denial of defendants' requested instructions.

Instruction 22 enumerated elements of damage recoverable by the plaintiff. Although several objections to this lengthy instruction are urged on appeal, only two—that there was no evidence of medical or hospital bills, or of Tapia's impaired earning ability—were called to the attention of the trial court and thus preserved for review. Baros v. Kazmierczwk, 68 N.M. 421, 362 P.2d 798; Meeker v. Walraven, 72 N.M. 107, 380 P.2d 845. We cannot agree that there was no evidence to warrant giving the instruction. The record discloses an estimate of future hospital and medical expenses for an operation scheduled to be performed soon after trial. These were a proper element of damages. See Sturgeon v. L. B. Clark Co., 69 N.M. 132, 364 P.2d 757; Baros v. Kazmierczwk, supra; Am.Jur.2d, Damages, § 312. There is, likewise, testimony respecting loss of time and earnings, the substance being that certain injuries were permanent and would prevent Tapia from performing above-ground work, where most steel work was done, and that it was difficult to obtain employment at work which could be performed on the ground. The hourly wages earned by Tapia prior to the accident were in evidence. Although Tapia admitted that the amount of time he worked prior to his injury varied, depending upon when there was such construction work available, the fact that specific future loss of earnings does not appear in the record does not make the instruction on loss of earning ability erroneous. Baros v. Kazmierczwk, supra; Sturgeon v. Clark, supra.

Defendants complain of the court's stock instruction 6:

" * * *

" 'Contributory negligence' is defined as that negligence on the part of a plaintiff *or* defendant, which combined and concurred with the opposite party's negligence and contributed to the injury as an approximate cause thereof and as an element without which the injury would not have occurred." (Emphasis added)

This is clearly an improper definition of contributory negligence. See Silva v. Waldie, 42 N.M. 514, 82 P.2d 282, and U.J.I. 13.1. Standing alone, the improper charge might be prejudicial. It has been held, however, that a defect or omission in one instruction may be cured by another instruction. Ortega v. Texas-New Mexico Ry., 70 N.M. 58, 370 P.2d 201. Furthermore, all instructions must be read and considered together, Griego v. Conwell, 54 N.M. 287, 222 P.2d 606, and if, when so considered, they fairly present the issues and the law applicable thereto, they are sufficient. McFatridge v. Harlem Globe Trotters, 69 N.M. 271, 365 P.2d 918, 89 A.L.R.2d 1154; Viramontes v. Fox, 65 N.M. 275, 335 P.2d 1071; Blewett v. Barnes, 62 N.M. 300, 309 P.2d 976; Barakos v. Sponduris, 64 N.M. 125, 325 P.2d 712; Gerrard v. Harvey & Newman Drilling Co., 59 N.M. 262, 282 P.2d 1105; Chandler v. Battenfield, 55 N.M. 361, 233 P.2d 1047. In explicit terms, the court, by instruction 20, correctly charged the jury:

" * * * In the State of New Mexico, if you believe that Mr. Tapia himself was negligent and that his own negligence, if any, proximately contributed to cause his own injuries, then Mr. Tapia cannot recover damages, regardless of any negligent conduct on the part of Joe."

A careful review of the instructions as a whole convinces us that the jury could not have been misled by the unfortunate language used in instruction no. 6, and that they must have understood, from the more explicit language of instruction no. 20, that if negligence of the plaintiff proximately contributed to the damage of which the plaintiff complains, he cannot recover even though the defendant was negligent.

Denial of a requested instruction to the effect that if there was no 2 x 4 board in the beams where plaintiff was working, a verdict must be returned for defendants is also asserted as error. We here simply note the court did give an instruction which adequately covered the issue.

 Defendants argue that instructing the jury on the use of mortality tables in connection with its consideration of damages was error requiring reversal because (1) the mortality tables were not admitted into evidence, and (2) there was no evidence of a permanent disability. The record discloses an offer of the tables and that the court said, "let's do it." Counsel thereupon, without objection, read to the jury from the mortality tables the life expectancy of a man of plaintiff's age. It is apparent that both the court and counsel understood that remark to admit the exhibit into evidence. Our review of the record shows medical testimony that an injury to plaintiff's foot is permanent and that it would be dangerous for him to climb or perform the ordinary duties for which he is trained, above ground. Hence, use of the table was not error.

█ A party is entitled to an instruction on his theory of the case if such theory is pleaded and supported by the evidence. Reed v. Styron, 69 N.M. 262, 365 P.2d 912; Terry v. Biswell, 66 N.M. 201, 345 P.2d 217; Lucero v. Torres, 67 N.M. 10, 350 P.2d 1028. Defendants argue that the court erred in refusing to submit an instruction on assumption of the risk by Tapia. They contend that as it had started to rain, making the aluminum ladder slippery, and because the tip of the ladder did not extend beyond the top of the beam, it became necessary for Tapia to hold to the beam or the 2 x 4 between the beams in order to climb up onto the roof. Thus, they argue, Tapia assumed the risk in climbing up the ladder instead of descending. It is also claimed that the ladder was unsafe because one rubber tread was missing from the base of the ladder making it more likely to slip. However, there is no evidence that the ladder slipped or that dampness on the ladder had anything to do with the fall.

█ Under the doctrine of assumption of risk, there may be a voluntary assumption of a risk of a known danger arising from the negligence of another, which will prevent recovery for injury even though he is in the exercise of due care. 1 Shearman & Redfield on Negligence (Rev.Ed.) § 135. The author there sets forth the essential elements of assumed risk in negligence cases, saying:

"The essential elements of assumed risk are knowledge, actual or implied, by the plaintiff of a specific defect or dangerous condition caused by the negligence of the defendant in the violation of some duty owing to the plaintiff, the public or persons in his position, together with the plaintiff's appreciation of the danger to be encountered and his voluntary exposure of himself to it. * * *"

Reed v. Styron, supra; Lunsford v. Standard Oil Co. of Calif., 84 Cal.App.2d 459, 191 P.2d 82; Dean v. Martz, 329 S.W.2d 371 (Ky.1959); Lake v. Emigh, 118 Mont. 325, 167 P.2d 575; Landrum v. Roddy, 143 Neb. 934, 12 N.W.2d 82, 149 A.L.R. 1041.

 Even though the physical surroundings that create the danger are known, a person will not be held to have voluntarily assumed a risk where the specific danger which produced the injury is unknown. Beck v. Monmouth Lumber Co., 137 N.J.L. 268, 59 A.2d 400; Burns v. Delaware & A. Tel. & Tel. Co., 70 N.J.L. 745, 59 A. 220, 67 L.R.A. 956. The testimony here is that in climbing to the top of the ladder, it was necessary for Tapia to hold to some support on the roof of the building under construction, but we find no evidence of knowledge by him, actual or implied, of a specific defect or dangerous condition caused by defendants' negligence, i. e., the loose board, nor of an appreciation by plaintiff that such danger was to be encountered. Accordingly, the doctrine of assumption of risk is not applicable under the facts. Reed v. Styron, supra; Snodgrass v. Turner Tourist Hotels, 45 N.M. 50, 109 P.2d 775.

█ Instruction 2 defining preponderance of the evidence as meaning that the fact in issue must be established "to your satisfaction" is challenged as placing a

burden not authorized by law upon the defendants in establishing their affirmative defense of contributory negligence. This, they argue, requires that the minds of the jurors be relieved of all doubt or uncertainty. But, a general exception or objection is not sufficient to preserve the claimed error. The specific vice in the instruction must be pointed out so as to leave no doubt that the court's mind was actually alerted to it. State v. Compton, 57 N.M. 227, 257 P.2d 915; Gonzales v. Allison & Haney, 71 N.M. 478, 379 P.2d 772; Zamora v. Smalley, 68 N.M. 45, 358 P.2d 362. This the defendants failed to do.

 We do not agree that it was error to refuse defendants' tendered cautionary instructions. Generally, whether cautionary instructions should be given rests within the sound discretion of the court. A review of the instructions given by the court in this case convinces us that the jury was fully and adequately instructed on the applicable law. We cannot say that refusal to give the requested instructions deprived the defendants of a fair trial. In this case, a motion for judgment notwithstanding the verdict was denied. The verdict thus comes to this court not only with the approval of the jury, but with that of the trial court, after considering all facets of the trial. Lanier v. Sec. Acceptance Corp., 74 N.M. 755, 398 P.2d 980.

The same reasoning applies to the final argument that the verdict of $40,000 is excessive. Vivian v. A. T. & S. F. Ry., 69 N.M. 6, 363 P.2d 620, said:

> "* * * Where the trial court, as here, has allowed the verdict to stand, the appellate court will not weigh the evidence but will look to see whether the evidence, viewed in the light most favorable to upholding the verdict, affords substantial support for the verdict. If it affords such substantial support, the verdict must be affirmed; if it does not, it must be reversed. * * *"

So viewing the evidence in this case, we cannot say that the verdict resulted from passion, prejudice, partiality, sympathy, undue influence, or some corrupt motive, or that the jury was mistaken as to the measure of damages. The mere fact that a jury's award is possibly larger than this court would have given is not sufficient to disturb a verdict. Hall v. Stiles, 57 N.M. 281, 258 P.2d 386. See, also, Terrel v. Lowdermilk, 74 N.M. 135, 391 P.2d 419; Massey v. Beacon Supply Co., 70 N.M. 149, 371 P.2d 798; Sturgeon v. Clark, supra.

It follows that the judgment appealed from should be affirmed.

It is so ordered.

CHAVEZ, C. J., and WOOD, J., Ct.App., concur.