560 P.2d 169 (1976)
560 N.M. 105
William B. CURTISS, Plaintiff-Appellee,
v.
AETNA LIFE INSURANCE COMPANY, Defendant-Appellant.
No. 2338.
Court of Appeals of New Mexico.
June 15, 1976.
Certiorari Denied July 15, 1976.
*170 Rex D. Throckmorton, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for defendant-appellant.
Charlotte Mary Toulouse, Toulouse, Krehbiel & Cheney, P.A., Albuquerque, for plaintiff-appellee.

OPINION
SUTIN, Judge.
Plaintiff recovered judgment on an oral contract of insurance for compensatory and punitive damages. Defendant appeals from a denial of its motion for judgment N.O.V. We affirm.

*171 A. Alleged material misrepresentations were questions of fact for the jury.

Plaintiff made application with Aetna Life Insurance Company for an insurance policy which covered health insurance. In answer to one question: "Has any person to be covered had any Accident, Health or Life Insurance ... declined ...?" Plaintiff answered "No".
Whether this answer was a material misrepresentation depends upon the facts which surrounded plaintiff's prior application for health insurance with Allstate Insurance Company. Plaintiff's testimony was contradictory as to a conversation with an agent of Allstate. Plaintiff admitted that an agent told him that this application had been denied. However, the agent also told him that this application was being withdrawn, and that plaintiff did not have to reveal that fact. Plaintiff felt that he had withdrawn his application. As a matter of fact, plaintiff's application had been withdrawn. Allstate did not actually decline plaintiff's application. Plaintiff answered the question correctly. His answer was not a misrepresentation.
Contradictions in plaintiff's testimony only affect his credibility. We do not weigh the evidence. It is the duty of the jury to weigh the evidence, determine the credibility of the witness, the weight to be given to his testimony, and determine where the truth lies. Tapia v. Panhandle Steel Erectors Company, 78 N.M. 86, 428 P.2d 625 (1967).
The issue presented in this case requires contractual interpretation. The intent with which plaintiff acted is irrelevant. Modisette v. Foundation Reserve Insurance Co., 77 N.M. 661, 427 P.2d 21 (1967). We believe the plaintiff's interpretation was reasonable.
The word "declined" in the question is ambiguous. It has many interpretations. See 2 Roget's International Thesaurus (3d ed. 1962) at 788. The well established test in New Mexico is that where terms used are ambiguous, the test is not what the insurer intended its words to mean, but rather what a reasonable person in the position of insured would understand them to mean. Williams v. Herrera, 83 N.M. 680, 496 P.2d 740 (Ct.App. 1972). A reasonable person could understand that being asked to withdraw an application for health insurance was not the equivalent of having been "declined" insurance.
In answer to a second question: "Has any person to be covered ever been treated, during the past 5 years, for any sickness, disease or injury, or had any departures from good health not stated elsewhere in the application?" Plaintiff answered "No".
Plaintiff went to a doctor in Ohio for the express purpose of getting a physical examination. Plaintiff was told that his cholesterol was high and the doctor put him on a low fat diet. Plaintiff informed defendant of the name and address of the doctor. Furthermore, plaintiff did not consider high cholesterol a sickness, disease or injury.
In answer to both questions, whether plaintiff made a misrepresentation was a question of fact for the jury.
The jury believed that plaintiff did not misrepresent the fact that his insurance application with Allstate was "declined", nor that plaintiff had been treated for sickness, disease or injury. An appellate court should not place itself in the position of judge and jury below. We should follow the admonition in Hooker v. Hancock, 188 Va. 345, 49 S.E.2d 711 (1948):
It must be kept in mind that plaintiff is fortified by a jury's verdict and the judgment of the trial court  thus he occupies the most favored position known to the law. [49 S.E.2d at 712].

B. Plaintiff was entitled to punitive damages.

The court gave an instruction on damages, the second paragraph of which is U.J.I. 14.25 and reads as follows:
If you find that the conduct of defendant was willful and wanton and proximately caused damage to plaintiff, and if you further find that justice and the public good require it, you may award plaintiff, *172 in addition to any compensatory damages to which you find plaintiff entitled, an amount by way of example or punishment, as punitive damages, which will serve to punish the defendant and to deter others from the commission of like offense. [Emphasis added].
Defendant objected to this portion of the instruction on two grounds: (1) punitive damages were not raised in the pleadings nor referred to in the pre-trial order, and (2) there was no evidence adduced at trial that would warrant the instruction. The first point was waived on this appeal.
Defendant now contends that plaintiff's pleadings did not contain any requests for punitive damages; that the pleadings were not amended when defendant objected to the instruction, and the issue of punitive damages was not tried with the implied or express consent of defendant as required by Rule 15(b) of the Rules of Civil Procedure. Defendant did not claim that the pre-trial order was controlling. This claim of error was waived.

(1) Punitive damages was tried with the express consent of defendant under Rule 15(b).

Count three of plaintiff's complaint alleged that plaintiff was damaged in the sum of $100,000.00 by reason of defendant's fraudulent and bad faith refusal to pay plaintiff's claim. Plaintiff did not use the words "punitive damages". In answer to one of defendant's interrogatories, plaintiff stated that one of the categories of damages sought was "punitive damages". Thereafter, defendant denied the allegations of count three of plaintiff's complaint. During defendant's cross-examination of plaintiff, plaintiff announced that his "complaint also alleges punitive damages." Defendant made no objection to this comment. During the trial of the case, defendant made no objection to any evidence which might bear on the issue of fraud or bad faith.
Fraud and bad faith are essential elements of punitive damages for breach of contract. State Farm General Insurance Company v. Clifton, 86 N.M. 757, 527 P.2d 798 (1974). Defendant was put on notice of the issue of punitive damages. The fact that an amendment to the complaint was not actually made to use the words "punitive damages" is unimportant. Aguayo v. Village of Chama, 79 N.M. 729, 449 P.2d 331 (1969).
Defendant expressly or impliedly consented to try the issue of punitive damages under Rule 15(b).

(2) Evidence supported an award of punitive damages.

U.J.I. 14.25 did not intend that, to obtain an award of punitive damages, a defendant must be "willful and wanton" in conduct toward a plaintiff. It should read "willful or wanton".
The court did instruct the jury that "willful and wanton" means "actual or deliberate intention to harm or which, if not intentional, shows an utter indifference to or conscious disregard for the rights of others." [Emphasis added]. Defendant did not object to this instruction. It is controlling.
The rule stated in State Farm General Insurance Company v. Clifton, supra, for breach of contract is:
Punitive damages can be awarded in a breach of contract action in New Mexico, but there must be a showing of malice or of reckless or wanton disregard of plaintiff's rights. [Emphasis added] [86 N.M. at 759, 527 P.2d at 800].
"There is very little, if any, difference between `willful' and `malicious' conduct". An act characterized as "`willfully' or `maliciously' ... denotes the intentioned doing of a harmful act without just cause or excuse or an intentional act done in utter disregard for the consequences, ... and does not necessarily mean actual malice or ill will, ... ." [Emphasis added]. Potomac Insurance Company v. Torres, 75 N.M. 129, 131-32, 401 P.2d 308, 309 (1965).
Aetna admits on appeal that the evidence established an oral contract of insurance *173 between the parties, the same as though an actual policy had been issued. The contract had been breached by refusal to pay.
In Clifton, supra, the court held that, in the absence of bad faith or fraud, it would be improper to assess punitive damages. "Bad faith" was defined as meaning "any frivolous or unfounded refusal to pay; it is not necessary that such refusal be fraudulent." [86 N.M. at 759, 527 P.2d at 800]. Aetna refused to pay because plaintiff was unable to take the physical examination, plaintiff then being in the hospital suffering a heart attack.
The record shows:
On July 19, 1972, plaintiff filled out an application for hospitalization insurance with Paul Lattin, agent of Aetna, and plaintiff paid $64.06 by check to Aetna, which was accepted. On August 4, 1972, Aetna's home office requested that the local office obtain a doctor's statement. On September 8, 1972, the home office again inquired about a doctor's statement. Eleven days later, on September 19, 1972, plaintiff was called for a correct address of the doctor. This application expired in sixty days and on September 27, 1972, plaintiff was required to fill out a second application for insurance. This delay was due to the fact that the application was left in the agent's desk drawer, the agent who had quit the firm. Aetna admitted this conduct was negligent. On October 13, 1972, plaintiff suffered a heart attack. The following Monday, his wife called the agent to remind him that an application had been filed in July and she wanted to know if he was insured and the agent assured her that he was and stated he was going to request a physical examination. She told the agent her husband was in the hospital. The agent said he would have to contact the home office and would let her know the following morning. He never did. On October 20, 1972, Aetna declined plaintiff's application because he was unable to take the physical examination and refused to pay plaintiff's medical expense.
This evidence falls within the meaning of the words "willful", "wanton" or "malicious" conduct. Defendant intentionally refused to pay without just cause or excuse because it declined plaintiff's application after plaintiff suffered a heart attack, knowing that plaintiff could not take a physical examination. The evidence was substantial in support of the instruction on punitive damages.
Affirmed.
IT IS SO ORDERED.
LOPEZ, J., concurs.
HERNANDEZ, J., dissents.
HERNANDEZ, Judge (dissenting).
I respectfully dissent.
The plaintiff knew that he had been rejected by the Allstate Insurance Company, yet in his application with defendant he denied this fact. His argument that he had not been denied insurance coverage because he had withdrawn his application, is sheer sophistry. Whether he acted fraudulently, negligently, or innocently, is not controlling. Modisette v. Foundation Reserve Insurance Co., 77 N.M. 661, 427 P.2d 21 (1967). As to the materiality of this misrepresentation, Mr. Meyer, the defendant's general agent in Albuquerque, testified in part as follows:
"Q. Are you familiar with the underwriting policies of Aetna?
"A. Yes, I am.
"Q. Is it important from an underwriter's standpoint to know about prior insurance applications made by an applicant, and whether or not those applications have been denied?
"A. Yes, because it helps personal history on the individual.
"Q. And knowledge about prior applications is material in determining insurability?
"A. Yes, it is; sure is."
Terse as these answers were, nonetheless, they were not refuted. However, irrespective of these answers, I believe that the materiality of the answer to the question is self-evident because it relates directly to the plaintiff's insurability. The materiality *174 of an answer to such a question is determined by the probable and reasonable influence it would have on an insurer's decision whether or not to accept the risk, and if so, with what qualifications. Rael v. American Estate Life Insurance Company, 79 N.M. 379, 444 P.2d 290 (1968).
The trial court, in my opinion, erred in not granting the defendant's motion for judgment N.O.V., because in my opinion, there was neither evidence nor inference from which the jury could have arrived at its verdict. See Tapia v. McKenzie, 85 N.M. 567, 514 P.2d 618 (Ct.App. 1973).