This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-39238**

**STATE OF NEW MEXICO,**

> Plaintiff-Appellee,

v.

**IRENE ARCHER,**

> Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY**
**Cindy M. Mercer, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Michael J. Thomas, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Carrie Cochran, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**MEDINA, Judge.**

**{1}** Defendant Irene Archer was convicted of fraud (over $20,000), contrary to NMSA 1978, Section 30-16-6(F) (2006) (Count 2); computer access with the intent to defraud or embezzle (over $20,000), contrary to NMSA 1978, Section 30-45-3(E) (2006) (Count 3); and of computer abuse (false data), contrary to NMSA 1978, Section 30-45-4(B) (2006) (Count 4). Defendant argues on appeal: (1) the evidence was insufficient to support her conviction for fraud, and (2) the judgment and sentence does not reflect the

district court's ruling that her convictions for fraud and computer access with the intent to defraud or embezzle were based on unitary conduct and that her conviction for computer access with intent to defraud or embezzle should be vacated on double jeopardy grounds. We hold that the evidence was sufficient for a reasonable jury to find Defendant guilty of fraud. Additionally, we agree that the judgment and sentence does not reflect the district court's ruling as to Defendant's convictions for fraud and computer access with the intent to defraud or embezzle. We therefore affirm Defendant's conviction for fraud and remand to the district court to amend its judgment and sentence to reflect the court's dismissal of Defendant's conviction of computer access with the intent to defraud or embezzle.

**BACKGROUND**

**{2}** The following facts are based on the evidence presented during Defendant's trial. Defendant began working for the optometry practice owned by Dr. Donald Leach in April 2009 and remained employed in his office until she was terminated in February 2015. During Defendant's employment, she was responsible for ensuring insurance companies and patients were billed for their medical procedures and the handling of payments made via cash, check, and credit card. Each time a patient made a cash payment a receipt was generated and a record was made. Both Dr. Leach and Defendant's coworkers testified that the majority of Defendant's duties involved working in the billing system. In addition to Defendant's billing or "online" duties, Defendant also had some very limited "offline" duties, such as making the coffee when she arrived at the office.

**{3}** Defendant and Dr. Leach made arrangements for Defendant to work a nontraditional schedule in order to care for her ill husband. Under the arrangement, Defendant would come into the physical office location in the early hours of a given morning, often as early as 1:00 a.m., and would work until midmorning, usually around 10:00 a.m. As part of this arrangement, Defendant was required to physically be in the office to log into the billing system, so as to not violate HIPAA regulations, and similarly, was not allowed to initially clock in until she was physically present in the office.

**{4}** The billing and timekeeping software used by Dr. Leach's office was called "Revolution EHR." Every employee with access to Revolution EHR had a unique login ID and password. Employees did not know each other's login information. If someone forgot their password, the system administrator for Revolution EHR would generate a temporary password and that person would be prompted at login to create a new password. The administrator could not view system users' passwords. Every time an employee logged on to the Revolution EHR and accessed records with their unique credentials, the software created a record of the IP[1] address for the computer used to access the software.

---

1IP stands for "Internet Protocol," and an IP address is a unique set of numbers used to identify a particular network.

**{5}**     Dr. Leach's office also used a digital timekeeping system, which allowed his employees to log and record their hours worked from their computers. Employees' hours were recorded either automatically by tracking when they logged in and out, or manually by entering their time. The timekeeping system also recorded the location of the user through the ISP[2] of the login.

**{6}**     Between 2013 and 2014, Dr. Leach noticed a financial decline in his business, and in early 2015 hired McHard Accounting Consulting, a forensic accounting firm, to review his business accounts. The forensic accountant who conducted the review, Beth Mohr, testified at trial about her findings. As she explained, Ms. Mohr created a table comparing the hours Defendant was logged into the billing program to the hours she reported she was working. From her analysis, Ms. Mohr found that between January 2, 2013, and December 30, 2014, there was a discrepancy of 2,059 hours Defendant had reported working but had not been logged into the billing software. At Defendant's rate of pay, this amounted to $28,826 Defendant had been paid but had not worked on matters related to her primary responsibility; that being, performing duties within the billing program. Additionally, Ms. Mohr testified there was further evidence of times when Defendant was logged into the billing and records software but not clocked in, and other instances where Defendant had clocked in from an IP address assigned to a network outside of the office and not associated with Dr. Leach's office.

**{7}**     Dr. Leach also consulted with an information technologies (IT) specialist, Luis Brown, who testified that based on his review Defendant had logged into the billing and records software from an IP address that was not associated with or used by Dr. Leach's office.

**{8}**     The jury convicted Defendant of one count of fraud (over $20,000) , one count of computer access with intent to defraud or embezzle , and one count of computer abuse (false data) . During sentencing, the State initially asserted its belief that Defendant's convictions for fraud and computer access with intent to defraud or embezzle should be merged but later stated it was not asking the court to consider merger, but instead to run all the counts concurrently. Defense counsel requested that the court merge all three convictions. The district court found that Defendant's convictions for fraud and computer access with intent to defraud or embezzle were based on similar conduct, did not warrant a separate conviction, and stated its intent to merge the two counts. The district court further ruled that Defendant's conviction for computer abuse (false data) was not based on the same conduct and would not be merged with the other two convictions. The district court sentenced Defendant to a term of nine years for her fraud conviction and eighteen months for her computer abuse with false data conviction. The district court ran the two sentences concurrent to each other and suspended all but 364 days. However, the judgment and sentence filed in the district court did not reflect the district court's vacation of Defendant's conviction for computer access with intent to

---

2ISP stands for "Internet Service Provider." Ms. Mohr, the forensic accountant hired by Dr. Leech to conduct a review of his business accounts, used ISP addresses to reference the login's IP addresses in her testimony.

defraud or embezzle and instead imposed a sentence for each of Defendant's three convictions. This appeal followed.

## DISCUSSION

**{9}** We begin by addressing Defendant's argument that there was insufficient evidence to show she "intentionally misrepresented" the time and hours she worked to support her fraud conviction. Next, we address Defendant's argument that the judgment and sentence does not reflect the district court's ruling that her conviction for computer access with intent to defraud or embezzle should be vacated because it was based on the same conduct supporting her fraud conviction.

## I.      Sufficiency of the Evidence

**{10}** Defendant argues that there was insufficient evidence to show that she "intentionally misrepresented" the time and hours she worked to support her fraud conviction. Defendant asserts that the existence of nontraditional work hours, the discrepancy between the hours she reported, and the hours she was logged into the system do not provide evidence of fraud. We disagree.

**{11}** In reviewing a challenge to the sufficiency of evidence, an appellate court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.  During our review "we ask whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Astorga*, 2015-NMSC-007, ¶ 57, 343 P.3d 1245 (internal quotation marks and citation omitted). There is no basis for reversal premised upon the mere existence of contrary evidence because the test is if a rational jury could have found the existence of the essential factors to find beyond a reasonable doubt. *Id.* ¶ 57.

**{12}** "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883. In order to convict Defendant of fraud (over $20,000), the jury was instructed, in relevant part, that the State must prove beyond a reasonable doubt that

> 1.      [D]efendant, by any words or conduct, misrepresented a fact: to wit the time and the actual hours she worked, to Dr. . . . Leach, intending to deceive or cheat Dr. Leach;
>
> 2.      Because of the misrepresentation and Dr. Leach's reliance on it, [D]efendant obtained over $20,000.

**{13}** The State presented evidence that Defendant was not allowed to work from home, nor was she allowed to clock in prior to arriving at work, from a location such as

her home. Dr. Leach testified that, despite it being forbidden, Defendant was capable of logging in from locations other than the office so long as it was through a laptop. Mr. Brown, an IT consultant, testified that Defendant had repeatedly logged in from an IP address assigned to a network that was not associated with or used by Dr. Leach's office. Ms. Mohr, a forensic accountant, testified that Defendant claimed to have worked 2,059 hours while not logged into the billing program, which was the means by which Defendant effectuated the great majority of her work responsibilities, and therefore had been paid for time Defendant had not actually worked (timecard fraud) in the amount of $28,826. To reiterate, this conclusion was based on large discrepancies Ms. Mohr found between the time Defendant reported to be working and the time Defendant was not logged into the billing system as would have been normal when effectuating her responsibilities. Additionally, Ms. Mohr found that Defendant had clocked in and out from locations other than the office.

**{14}** Defendant's argument regarding the sufficiency of the evidence relies on her testimony that she was permitted to log in and work from home under a nontraditional work schedule. This, however, contradicts the State's evidence, which suggested that Defendant was able to work a nontraditional work schedule from the standpoint of which hours Defendant was expected to work, but not from the standpoint of where that work was supposed to take place, which was to be at the office. Ultimately, "only the trier of the facts may weigh the testimony, determine the credibility of witnesses, reconcile inconsistent or contradictory statements of a witness, and say where the truth lies." *Tapia v. Panhandle Steel Erectors Co.*, 1967-NMSC-108, ¶ 7, 78 N.M. 86, 428 P.2d 625. The fact that evidence exists that may have cast doubt on contrary facts does not supply a basis for reversal on appeal. Indeed, appellate courts are unable to substitute their judgment for that of the fact-finder. *See State v. Griffin*, 1993-NMSC-071, ¶ 17, 116 N.M. 689, 866 P.2d 1156. We therefore are unable to further consider Defendant's preferred interpretation of the trial evidence. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 ("Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts.").

**{15}** Our review shows sufficient evidence to establish that Defendant misrepresented the time she actually worked for Dr. Leach, and as a result of those misrepresentations was paid more than $28,000 in excess of 2,000 hours of work she did not actually perform. Therefore, we hold there was sufficient evidence to support Defendant's fraud conviction.

## II.    The Judgment and Sentence Should Be Amended

**{16}** Defendant contends the judgment and sentence does not reflect the district court's ruling that her convictions for fraud and computer access with the intent to defraud or embezzle were based on unitary conduct, and that her conviction for computer access with intent to defraud or embezzle should be vacated on double jeopardy grounds. The State agrees that "through oversight, clerical mistake or otherwise, the judgment and sentence did not reflect the [district] court's ruling at the

sentencing hearing, with which the parties were in agreement" and concedes that Defendant's conviction for computer access with intent to defraud or embezzle should be vacated. Although we are not bound by the State's concession, *see State v. Comitz*, 2019-NMSC-011, ¶ 25, 443 P.3d 1130, having reviewed the record and transcripts of proceedings, we agree that the district court intended to vacate Defendant's conviction for computer access with intent to defraud or embezzle, a determination which the judgment and sentence does not reflect. We therefore remand this case to the district court in order to correct the judgment and sentence.

**CONCLUSION**

**{17}** For the foregoing reasons, we affirm Defendant's conviction for fraud (over $20,000), and remand to the district court for correction of the judgment and sentence reflecting the district court's decision to vacate Defendant's conviction for computer access with intent to defraud or embezzle on double jeopardy grounds.

**{18} IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**MEGAN P. DUFFY, Judge**