640 P.2d 512

Robert L. NORTH, Plaintiff-Appellant,

v.

PUBLIC SERVICE COMPANY OF NEW MEXICO and Asplundh Tree Expert Company, Defendants-Appellees.

No. 5396.

Court of Appeals of New Mexico.

Jan. 19, 1982.

Paul S. Wainwright, Gregory V. Pelton, Robinson, Stevens & Wainwright, Albuquerque, for plaintiff-appellant.

Thomas F. Keleher, Donald W. Codding, Keleher & McLeod, P. A., Albuquerque, for defendants-appellees.

## OPINION

NEAL, Judge.

Plaintiff property owner sued Public Service Company (PNM) for trespass, asking for compensatory and punitive damages. PNM instituted a separate suit for inverse condemnation. The two cases were consolidated for trial. Originally plaintiff's case was dismissed for failure to state a claim. On appeal it was held that plaintiff had stated claims for relief in trespass and for punitive damages. *North v. Public Service Company of New Mexico*, 94 N.M. 246, 608 P.2d 1128 (Ct.App.1980). After remand, the trial court granted PNM's motion for summary judgment and dismissed plaintiff's claim for punitive damages. Plaintiff appeals that order.

Preliminarily we note that the order dismissing plaintiff's punitive damage claim is not appealable; it is not a final order that practically disposes of the merits of plaintiff's claim. N.M.R.Civ.App.P. 3(a), N.M.S.A.1978. Further proceedings are contemplated. This case, before this Court for the second time, has yet to proceed to a trial on the merits. In the interest of judicial economy and to avoid further appeals arising out of the same issues, we address the substantive matter regarding dismissal of the punitive damage claim, and reverse. *See Montoya v. Anaconda Mining Company*, 20 N.M. St. B. Bull. 1293, 97 N.M. 1, 635 P.2d 1323 (Ct.App.1981).

Plaintiff owned a lot in the Manzano Mountains upon which he intended to build a secluded residence. Plaintiff's neighbor owned a lot immediately north of plaintiff's lot and the neighbor requested electric service from PNM. A representative of PNM came out to inspect the east boundary of plaintiff's property and placed stakes in the ground to locate the power line poles. Plaintiff noticed that one of the stakes was on his land and told PNM that he did not

want the poles on his land and requested they be located on the utility easement just east of his property line. Plaintiff also told the representative of PNM that the placement of the poles interfered with the easement plaintiff had purchased to build a road to his property. PNM's representative agreed to remove the poles. Plaintiff also insisted that environmental damage be kept to a minimum. Tree trimming was done by PNM which the plaintiff found acceptable, but plaintiff was concerned because one of the pole markers was still on his property. He again called the PNM representative. Plaintiff and the representative reached a clear understanding that no pole would be on plaintiff's land, and no pole would block plaintiff's access easement.

When plaintiff next returned to his property he was shocked to see the damage that had been done: One pole was placed on his property and another pole blocked his easement of access. PNM had bulldozed across an old logging road on his land to reach one of the pole sites that was reachable by another means. In using the logging road PNM had destroyed vegetation and some trees. Plaintiff was upset and put a claim through PNM channels. At times PNM was helpful but at other times PNM ignored his claim, saying they would "look into it." Attempts at settlement were made but no solutions were acceptable to the plaintiff. Plaintiff wanted PNM to move the offending poles, clear the debris, and put dirt on the logging road where the bulldozer had scarred the land. He also requested that PNM plant trees to replace those destroyed. He did not want seedlings but wanted ten-foot trees so that the land would be restored within five to eight years. From various nurseries, plaintiff obtained estimates that replacing the trees would cost $50,000, and communicated his proposed solution and its costs to PNM. PNM was less than responsive; plaintiff filed suit for trespass. Thereafter PNM filed a separate suit for inverse condemnation.

■ N.M.R.Civ.P. 56(c), N.M.S.A.1978 provides that summary judgment is proper where there is "no genuine issue as to any material fact." The summary judgment statute is drastic, and its use strictly limited. *Johnson v. J.S. & H. Construction Company*, 81 N.M. 42, 462 P.2d 627 (Ct.App. 1969). A reviewing court looks · to the whole record and views matters in the light most favorable to support a trial on the merits. *Nix v. Times Enterprises, Inc.*, 83 N.M. 796, 498 P.3d 683 (Ct.App.1972).

■ Viewed in the light most favorable supporting a trial on the merits, there are issues of fact which could support a jury's award of punitive damages. Plaintiff would not grant PNM an easement and made it clear that he did not want poles on his land because of other available routing for the electrical line. When PNM refused to consider plaintiff's solution, it left the poles on plaintiff's land and did not repair the damage; then, instituted a suit for inverse condemnation. PNM's conduct could be interpreted as an unnecessary taking of an easement which plaintiff would not voluntarily grant. In this way PNM could avoid moving the poles and force them on plaintiff whose requests they refused to recognize. PNM could have had use of an easement just to the east, but nevertheless sought to obtain another easement by inverse condemnation.

■ The taking or damaging of private property through eminent domain is permitted for none other than a public use. *Kaiser Steel Corporation v. W. S. Ranch Company*, 81 N.M. 414, 467 P.2d 986 (1970). A condemnor may take only what is necessary. *Hobbs Municipal School District No. 16 v. Knowles Development Company, Inc.*, 94 N.M. 3, 606 P.2d 541 (1980). Because there was a utility easement easily available, the jury could well determine that the "forced" easement may not have been in the public interest or necessary. The conclusion of the Court of Appeals in *North v. Public Service Company of New Mexico*, 94 N.M. 246, 208 P.2d 1128 (Ct.App.1980) that plaintiff had adequately stated a claim for punitive damages is buttressed by the present state of the record.

Defendant argues that even if its employees' actions could support punitive damages, there was no ratification by officials of PNM. *Samedan Oil Corporation v. Neeld*, 91 N.M. 599, 577 P.2d 1245 (1978). Although an officer of PNM signed the petition for inverse condemnation, defendant argues that filing suit to contest unreasonable demands is not ratification. The answer to that is that it is for the jury to determine whether plaintiff's demands or defendant's conduct were unreasonable. Ratification is a question of fact for the jury unless there was no evidence upon which reasonable minds could differ. Here there existed sufficient evidence upon which the jury could determine the issue of ratification either for or against PNM. A jury could find that PNM's actions regarding the "forced" easement, although facially legal, were not necessary; and that by signing the petition to institute an inverse condemnation suit, officials of PNM ratified the conduct complained of. Summary judgment dismissing plaintiff's claim for punitive damages should not have been granted.

Finally, we feel compelled to comment on the present procedural posture of the case. Plaintiff's trespass action and defendant's inverse condemnation claim have been consolidated and in the trespass action, defendant requested a jury trial. An order has been entered reciting that the defendant is entitled to inverse condemnation and providing for commissioners to assess the damage. From this we can probably assume that Judge Love intends to dispose of the compensatory damage portion of plaintiff's trespass claim in the inverse condemnation action. Once the commissioners' assessment of the damage is presented, the trial court could direct a verdict ordering the jury to accept the commissioners' assessment as compensatory damages, thus leaving the jury to decide only whether plaintiff is entitled to punitive damages in his trespass claim, and the amount thereof. The summary judgment dismissing plaintiff's claim for punitive damages is reversed.

The case is remanded to the district court for trial on the merits of plaintiff's claim for trespass and punitive damages.

PNM shall pay the costs of this appeal.

IT IS SO ORDERED.

WALTERS, C. J., and DONNELLY, J., concur.