667 P.2d 972

John **BUDAGHER** and Frances D. Budagher, his wife, Plaintiffs-Appellees,

v.

**AMREP CORPORATION, dba Rio Rancho Estates, Inc., Defendants-Appellants.**

No. 5893.

Court of Appeals of New Mexico.

April 12, 1983.

Certiorari Dismissed Aug. 10, 1983.

Ronald C. Morgan, Albuquerque, for plaintiffs-appellees.

Kenneth J. Ferguson, Robert G. McCorkle, Rodey, Dickason, Sloan, Akin & Robb, P.A., Jerrald J. Roehl, Jerrald J. Roehl & Associates, Albuquerque, I. Michael Bayda, Jacobs, Persinger & Parker, New York City, for defendants-appellants.

## OPINION

NEAL, Judge.

The defendants contend that reversible error was committed when the plaintiffs' requested instructions were inadvertently submitted to the jury for the first hour of its deliberation. We agree, and reverse.

The case, first tried in 1980, concerns the plaintiffs' claim that the defendants, Amrep Southwest, Inc. and Amrep Corporation, negligently controlled runoff, which caused flood damage to the plaintiff's property. After the first trial, which resulted in a verdict for the defendants, the Supreme Court reversed. *Budagher v. Amrep Corp.,* 97 N.M. 116, 637 P.2d 547 (1981). On retrial the jury entered a verdict for the plaintiffs which included punitive damage awards of three-quarters of a million dollars. Finding that the defendants consciously disregarded the rights of downstream owners in order to save money, the jury returned punitive damage awards of $650,000.00 against Amrep Corporation and $100,000.00 against Amrep Southwest, Inc. The jury found the defendants 95% negligent, and the plaintiffs 5% negligent; plaintiffs' compensatory damage award was $48,507.00.

The defendants attack the punitive damage award as excessive, and also contend that Amrep Corporation, the parent corporation of Amrep Southwest, should have been dismissed from the case. But the defendants' strongest argument, and the one on which we base our reversal, concerns the inadvertent submission of the plaintiffs' requested instructions to the jury. Because of our disposition of this point we need not consider the award of damages or the trial court's refusal to dismiss Amrep Corporation.

*Factual Background*

At approximately 11:00 A.M. on the final day of trial the jury retired to the jury room. The court reporter proceeded to the bench to get the court's jury instructions, but inadvertently picked up the plaintiffs' requested instructions, and took them into the jury room. At noon the jury went to lunch.

While the jury was having lunch the court reporter walked through the jury room to the restroom. She noticed the incorrect instructions on the table. Without telling anyone she replaced the incorrect instructions with the correct instructions.

The jury returned from lunch, and not long after that they called for the court reporter. They wanted the instructions they had had before lunch because they had written on them. In the hour before lunch the jury had answered three special interrogatories. This was the writing they had done on the incorrect instructions. In the three interrogatories the jury penciled in "yes" answers to three questions. We do not know if the answers represent the views of all of the jurors.

## SPECIAL INTERROGATORIES
## FOR THE JURY

QUESTION NO. 1: Do you find from the evidence that Defendant AMREP Corporation was guilty of negligence which was a proximate cause of the Plaintiffs' injuries?

ANSWER: (YES or NO)        Yes.

QUESTION NO. 2: Do you find from the evidence that Defendant AMREP Southwest, Inc. was guilty of negligence which was a proximate cause of the Plaintiffs' injuries?

ANSWER: (YES or NO)        Yes.

QUESTION NO. 3: Do you find from the evidence that Plaintiffs were guilty of negligence which was a proximate cause of the Plaintiffs' injuries?

ANSWER: (YES or NO)        Yes.

Question number 4, not answered, concerned allocation of negligence between the parties.

After the court reporter had been in the jury room she told the judge what had happened. The judge then summoned counsel and told them of the problem. A discussion followed:

THE COURT: Can we do this, can we go in—they have the original set now, the proper set—and tell them that if they can disregard those things?

MR. ROEHL [defense counsel]: That's fine with me.

The plaintiffs' attorney, Mr. Morgan, also agreed to the procedure. Mr. Henkel, defense co-counsel, asked for a few minutes to discuss things with Mr. Roehl, which the judge allowed. After the discussion with co-counsel Mr. Roehl wanted to know if plaintiffs' counsel, Mr. Morgan, had filled in the special interrogatories. Mr. Morgan said that he had not. Then:

Mr. Roehl: If that is so, then we would be willing to ask the jury if they could disregard the Instructions they have seen and go with the Court's Instructions and continue with this event.

The judge, contemplating the possibility of a mistrial, stated that "without making any decision, we'll go in there [the jury room] and make some inquiries and reserve some decision * * *." The judge further stated that he would not make any decision until the verdict was in.

The judge and counsel went into the jury room. The judge told the jurors of the mistake, and asked them if they could disregard the incorrect instructions and consider only the correct ones. All said they could.

Counsel and the judge returned to the judge's chambers.

THE COURT: All right. Now, after asking the jurors the questions that we did, is there any alteration of the prior position that you have taken?

MR. MORGAN: No, sir.

MR. ROEHL: Gee—this is tough.

The judge then discussed possible prejudice, and noted that the jury appeared to have gone through the instructions because Instruction No. 24 was open on the desk. Mr. Roehl then said that before making his decision he wanted to call the insurance carrier, and the judge allowed him to do so.

The next morning the jury continued to deliberate, and counsel and the judge met in the judge's chambers. The judge said: " * * * [i]t's my understanding then that this Court was going to rule today with reference to keeping this case with the jury, declaring a mistrial or what."

The judge then had counsel put their positions on record. Mr. Roehl moved for a mistrial. After argument, the judge denied the motion. Later in the morning, at 11:22 A.M., the jury returned its verdict.

### PRESERVATION OF ERROR

The plaintiffs contend that the defendants agreed to the judge's questioning of the jury and have waived any error. Under the circumstances we do not believe that the defendants waived any claim of error.

■ The comments of the trial court, in the afternoon when the mistake was discovered, and the following morning when the jury continued deliberation, indicate that he was taking a "wait-and-see" approach, suspending a mistrial decision until May 12. On May 12, when asked for his position, defendants' counsel moved for a mistrial and stated his reasons. In view of the way the judge handled the matter, it is clear that defense counsel was permitted by the court to reserve any consideration of a request for mistrial until the next day, and defendant's mistrial motion was enough to preserve the error.

### THE ERROR

For roughly the first hour of its deliberation the jury had the plaintiffs' requested instructions. Each of the instructions had "Plaintiffs' Requested Instruction No. _____" on the top. Many of the instructions had the U.J.I. notation at the bottom, contrary to N.M.R.Civ.P. 51(G), N.M.S.A. 1978 (1980 Repl.Pamph.). Six instructions

had a citation to the previous appeal in the case, "*Budagher v. Amrep Corporation* [97 N.M. 116], 637 P.2d 547 (N.M.1981)." One instruction had a citation to another case against the defendants, "*Gutierrez v. Rio Rancho Estates, Inc.,* 93 N.M. 755, 605 P.2d 1154".

Other errors and omissions are more significant. Plaintiffs' requested instruction number 21, concerning punitive damages, had the word "or" underlined twice: " * * * if you further find that the acts of defendant were willful, wanton, malicious, reckless, *or* grossly negligent, then you may award exemplary or punitive damages."

Equally as important as what the jury saw on the plaintiffs' instructions is what they did not see in the first hour. Defendants' requested instruction number 5, approved by the court, explained its contributory negligence and Act of God defenses. This instruction was absent during the first hour. Defendants' requested instruction number 8, approved by the court, set forth its Act of God defense. It too was absent during the first hour. Also absent was defendants' requested instruction number 2, "A corporation is entitled to fair treatment. * * * " and number 15, which defined contributory negligence.

■ There can be no doubt that error exists. Was it reversible error? Because of the unusual nature of the error the parties have not cited us to any cases in which the same error was committed, and we have been unable to find any.

In *Scott v. Brown,* 76 N.M. 501, 416 P.2d 516 (1966) the trial judge wrote "refused" on one of the instructions, and signed his name below it. Realizing that he intended to give the instruction the judge then struck "refused" and wrote "given". The Supreme Court recognized the rule that instructions which unduly emphasize any portion of the case should not be given, but held that the error was harmless. The error of allowing a correct, although marked, instruction to go to the jury is not comparable to permitting unauthorized, heavily annotated requested instructions to be con-

sidered by the jury, inadvertent though it may have been.

In *New Mexico-Colorado Coal & M. Co. v. Baker,* 21 N.M. 531, 157 P. 167 (1916), two instructions were signed by one of the plaintiff's attorneys, and the defendant claimed that this demonstrated "an unwarranted confidence" between the plaintiff's attorneys and the court. It was held that this was not reversible error. Like *Scott, supra, New Mexico-Colorado Coal* deals with an error which is slight compared to the error in the present case.

*Dollarhide v. Gunstream,* 55 N.M. 353, 233 P.2d 1042 (1951), deals with improper material in the jury room. In *Dollarhide* the plaintiff claimed that the submission of pleadings to the jury was error. The Supreme Court rejected this argument noting that there was "no direct evidence that the objectionable pleading ever reached the jury room or that it was considered by the jury."

*State v. Beal,* 48 N.M. 84, 146 P.2d 175 (1944), is more helpful. In *Beal* the defendant claimed that exhibits were sent to the jury without the knowledge or presence of defendant's counsel. The Supreme Court reversed, but what is important is the standard used to evaluate prejudice in a case dealing with improper communications with the jury. The court adopted a "presumption of prejudice" test:

> In the case at bar there is nothing in the record to indicate that the communication did not affect the verdict. The burden as upon appellee to establish this fact and having failed to meet this requirement the presumption of prejudicial error must prevail.
>
> \*      \*      \*      \*      \*      \*
>
> "[W]here error occurs which, within the range of a reasonable possibility, may have affected the verdict of the jury, appellant is not required to explore the minds of the jurors in an effort to prove that it did in fact influence their verdict."

48 N.M. 92, 94, 146 P.2d 175.

In improper communications with jury cases New Mexico case law since *Beal, su-*

*pra,* has consistently applied the "presumption of prejudice" test. *State v. Gutierrez,* 78 N.M. 529, 433 P.2d 508 (Ct.App.1967); *State v. Orona,* 92 N.M. 450, 589 P.2d 1041 (1979); *State v. McCarter,* 93 N.M. 708, 604 P.2d 1242 (1980); *State v. Coulter,* 98 N.M. 768, 652 P.2d 1219 (Ct.App.1982); and *State v. Ho'o,* 99 N.M. 140, 654 P.2d 1040 (Ct.App. 1982). These cases all hold that when there has been improper communication with the jury the party adversely affected benefits from a "presumption of prejudice" which must be rebutted by the opposing party. The rule has been applied to various situations, with various results.

In *Gutierrez, supra,* while a juror was in the hall, someone brushed against her shoulder and told her "to make a wise decision." Our Court, noting that the remark was not threatening, that the person making the remark was identified, and that the juror said she did not feel any undue influence, held that the presumption of prejudice was rebutted.

In *Orona, supra,* two notes were submitted by the judge to the jury in the absence of defense counsel. The Supreme Court held that the State made no attempt to rebut the presumption of prejudice, and reversed defendants' conviction. *McCarter, supra,* considered a "shotgun" instruction, and held that the State did not rebut the presumption of prejudice.

*Coulter, supra,* and *Ho'o, supra,* are recent decisions by our Court. *Coulter* considered whether the presence of the "thirteenth juror" in the jury room was reversible error. In *Coulter* the alternate was in the jury room for ten minutes. Judge Hendley discussed the four standards used in evaluating prejudice in that situation, and adopted the presumption of prejudice analysis because it was "consistent with the analysis applied in this state to other improper communications with jury cases \* \* \*." Holding that the State made no showing to overcome the presumption, the defendant's conviction was reversed. In *Ho'o, supra,* the prosecutors carried two mannequins into the jury room and told the jury how to pick one of the mannequins up

so it would not come apart, and to lean the other mannequin against the wall. This was not reversible error.

In light of all of these cases it is clear that the error in the present case is serious. The presumption of prejudice against the defendants is supported by the record. Instructions that unduly emphasize any portion of the case should not be given, *Scott, supra,* yet plaintiffs' requested instruction 21 had the word "or" underlined twice: *"or* grossly negligent." This unduly emphasized the plaintiffs' contention that punitive damages should be awarded for any number of reasons. The most glaring example of prejudice is the absence, for the first hour of the jury's deliberation, of defendants' instructions containing their defenses. The answers to the special interrogatories indicate that while the jury had the incorrect instructions it made preliminary decisions about the case. The other errors—a citation to another case against the defendants and citations to the previous appeal—are not as grievous, but considering the cumulative effect of the errors and omissions, the presumption of prejudice is amply supported.

■ To rebut the presumption the plaintiffs point out that the judge gave a curative instruction, and that, after receiving the correct instructions, the jury continued deliberating for approximately seven hours. This is insufficient to rebut the presumption of prejudice.

We hold that under the circumstances presented here, the defendants did not receive a fair trial. The submission of plaintiffs' requested instructions instead of the court's instructions which included defendants' requests, requires a new trial.

IT IS SO ORDERED.

WALTERS, C.J., concurs.

LOPEZ, J., dissenting.

LOPEZ, Judge, dissenting.

I respectfully dissent.

The majority base their reversal of this appeal upon the "inadvertent submission of plaintiffs' requested instructions to the jury."

The majority opinion states "[t]he judge and counsel went into the jury room. The judge told the jurors of the mistake, and asked them if they could disregard the incorrect instructions and consider only the correct ones. All said *they could."* (Emphasis added.)

Only the jurors know what occurred inside their deliberation chamber. The jurors reported to the court that they could fairly decide the case, notwithstanding the inclusion of incorrect instructions. I believe that we should abide by what the jurors told the court.

The majority opinion concludes by stating that "[w]e hold that under the circumstances presented here, the defendants did not receive a fair trial." I would agree with much of the majority's holding if I accepted the premise that the facts, circumstances and legal authorities can reasonably be read and interpreted only as they would do so. But I do not agree with that premise.

My conclusion is that there are other reasonable constructions and interpretations of the facts, circumstances and legal authorities applicable to the case at bar. The late Justice of the United States Supreme Court, Oliver Wendel Holmes, once said that the trial of a case is never perfect because it is conducted by human beings and not machines. Errors do frequently occur, and that is the reason why a motion for a mistrial or new trial is directed by law to the sound discretion of the trial judge. *See also State v. Perrin,* 93 N.M. 73, 596 P.2d 516 (1979); *Hill v. Burnworth,* 85 N.M. 615, 514 P.2d 1312 (Ct.App.1973).

Applying the above principles to the case at bar, and considering all facts, circumstances and legal authorities, I conclude that the trial court did not abuse its discretion in denying defendant's mistrial and new trial motions.

Since the majority has not addressed the issue of excessiveness of damages, I will only state my opinion that the award of

damages was not excessive. *See Lujan v. Reed,* 78 N.M. 556, 434 P.2d 378 (1967).

I would affirm the judgment of the trial court in all respects and order that the appellants pay the costs on appeal.