717 P.2d 61

Joyce NORRIS, formerly Joyce M.
Saueressig, Petitioner-Appellee,
Cross-Appellant,

v.

Joe Stanley SAUERESSIG,
Respondent-Appellant,
Cross-Appellee.

No. 8205.

Court of Appeals of New Mexico.

Dec. 12, 1985.

Susan M. Conway, Robert D. Levy, Conway & Levy, P.A., Albuquerque, for petitioner-appellee, cross-appellant.

Sandra Morgan Little, Ann Steinmetz, Albuquerque, for respondent-appellant, cross-appellee.

**OPINION**

BIVINS, Judge.

Joyce Norris brought this action to divide a previously undivided community asset, Joe Saueressig's military retirement benefits. From a judgment awarding Norris a community interest in his retirement benefits, Saueressig appeals. Norris cross-appeals the refusal to divide retirement benefits which became due before the filing of her initial complaint.

The parties were divorced in 1965 in Arizona by the Superior Court of Pima County. The court approved a property settlement agreement between the parties and made it a part of the divorce decree. Neither the agreement nor the decree mentioned Saueressig's military retirement. At the time, Saueressig held the rank of captain in the United States Air Force.

In 1972, Saueressig retired from the service as a lieutenant colonel and began receiving his retirement benefits. Norris discovered in 1977 or 1978 that she might have an interest in her former husband's military retirement, but did not take legal action until April 8, 1981, when she filed her initial complaint in the District Court of Bernalillo County, Saueressig's current residence, to divide this asset.

Shortly after the filing of her action, the United States Supreme Court issued its opinion in *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), holding that federal law precluded states from dividing military retirement pay pursuant to state community property laws. On the basis of that decision, the trial court

granted Saueressig's motion for summary judgment, dismissing Norris' complaint with prejudice; however, the order also stated that the court retained "jurisdiction of the parties and of the subject matter of this lawsuit."

In 1982, Congress enacted the Uniform Services Former Spouses' Protection Act, 10 U.S.C. Section 1408 (1983), which in effect, overruled *McCarty* by allowing states to treat disposable retirement or retainer pay as community property. 10 U.S.C. § 1408(c)(1). Based undoubtedly on this legislation, Norris moved in July of 1983 to reinstate her complaint, and an order of reinstatement, approved by Saueressig, was entered on July 1, 1983. Several months later the Supreme Court of New Mexico reinstated pre-*McCarty* case law which treated military retirement benefits as community property. *Walentowski v. Walentowski*, 100 N.M. 484, 672 P.2d 657 (1983).

Following an evidentiary hearing, the trial court awarded Norris 26.9 percent of Saueressig's retirement pay from April 8, 1981, the date on which Norris filed her complaint.

Saueressig raises numerous issues challenging the award. Included among the arguments is the pivotal question of whether his military retirement allowance was a community asset which was divisible at the time of the parties' divorce in 1965. If it was not, then the judgment must be reversed, and Norris' complaint must be dismissed. Because we hold that, in 1965, the military retirement benefits did not constitute a community asset, and, therefore, were not subject to division, we need not reach the additional issues raised by the parties.

For the purposes of our discussion, we assume that the trial court correctly ruled that Saueressig was a domiciliary of New Mexico, not Arizona, at the time of the parties' divorce in 1965 and that, as a result, New Mexico law applies. This is necessary because, as our discussion which follows demonstrates, under Arizona law, military retirement benefits were not recognizable as community property in 1965.

At the outset, it is helpful to our analysis to outline briefly the turbulent history in New Mexico of the marital property status of military retirement benefits. In 1969, the New Mexico Supreme Court ruled that the portion of military retirement credits accrued during marriage was community property. *LeClert v. LeClert*, 80 N.M. 235, 453 P.2d 755 (1969). The United States Supreme Court, in 1981, however, held that federal law precluded the states from dividing, pursuant to state community property laws, the military benefits between spouses. *McCarty v. McCarty*. In response to the *McCarty* decision, the New Mexico Supreme Court, in *Espinda v. Espinda*, ruled that *McCarty* effectively overruled prior New Mexico case law, including *LeClert*, which had held that the retirement benefits were community property. 96 N.M. 712, 634 P.2d 1264 (1981). Following its decision in *Espinda*, the supreme court ruled, in *Whenry v. Whenry*, that the law pronounced in *McCarty* and *Espinda* would not be applied retroactively, meaning that divorce settlements, which classified military retirement benefits as community property, would not be reconsidered in light of the then current law. 98 N.M. 737, 652 P.2d 1188 (1982).

In 1982, Congress passed Uniform Services Former Spouses' Protection Act which permits courts to classify military retirement allowances according to state law. 10 U.S.C. § 1408. Effectively, the passage of the Act meant that the retirement funds, in New Mexico, could be considered again as community property. In 1983, the supreme court ruled that not only were the benefits community property but that the Act should be applied retroactively to the date of the *McCarty* decision, in order to compensate equitably those " 'who had substantial rights determined by the vagaries of the calendar.' " *Walentowski v. Walenstowski*, 100 N.M. at 487, 672 P.2d at 660, *quoting from, In re Marriage of Hopkins*, 142 Cal.App.3d 350, 360, 191 Cal. Rptr. 70, 77 (1983). *See also Koppenhaver*

*v. Koppenhaver*, 101 N.M. 105, 678 P.2d 1180 (Ct.App.1984).

*LeClert*, therefore, is again good law in New Mexico. *Walentowski v. Walentowski.* For purposes of divorces since 1969, military retirement benefits are considered community property. In our case, however, Norris and Saueressig divorced in 1965, four years prior to *LeClert.* Thus, the dispositive question is whether the *LeClert* ruling was to have only prospective effect.

We believe that the supreme court's pronouncements in related cases require prospective treatment of *LeClert.* The court's decision in *Whenry* is especially relevant. In *Whenry*, as indicated earlier, the court considered whether *McCarty* and *Espinda,* which overruled prior case law which had held that the benefits were community property, should be given retroactive treatment.

■ The court refused to do so. In reaching its conclusion, the court, relying on *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), applied a three-step inquiry to determine if a decision should be applied only prospectively. First, the decision must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression not clearly foreshadowed. Second, the purpose of the new rule and the effect of retroactive application on the rule's operation must be evaluated. Third, the possibility of injustice, hardship and an adverse impact on the administration of justice must be considered. With these guidelines in mind, we examine *LeClert.*

■ *LeClert* did not overrule prior case law. *Cf. Lopez v. Maez*, 98 N.M. 625, 651 P.2d 1269 (1982); *Claymore v. City of Albuquerque, aff'd sub nom., Scott v. Rizzo,* 96 N.M. 682, 634 P.2d 1234 (1981); *Hicks v. State*, 88 N.M. 588, 544 P.2d 1153 (1975). *LeClert* did, however, decide an issue of first impression not clearly foreshadowed. It was one of the first decisions to recognize that an unmatured retirement could be divided as community property. *See Van Loan v. Van Loan*, 116 Ariz. 272, 569 P.2d 214 (1977); *In re Marriage of Brown*, 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561 (1976); *Cearley v. Cearley,* 544 S.W.2d 661 (Tex.1976); *Webster v. Webster,* 442 S.W.2d 786 (Tex.Civ.App.1969); *Mora v. Mora*, 429 S.W.2d 660 (Tex.Civ.App.1968); *Payne v. Payne*, 82 Wash.2d 573, 512 P.2d 736 (1973). Although these decisions unanimously concluded that unmatured pension benefits were community property, some of them did so only after extensive analysis. *See e.g., In re Marriage of Brown; Cearley v. Cearley.*

The second inquiry, evaluation of the purpose of the new rule and the effect of retroactive application on the rule's operation, presents a more difficult question. The purpose of *LeClert* was to recognize the community's interest in compensation earned by a spouse during the marriage. Arguably, this purpose would be undercut if the rule were not given retroactive application. The supreme court, however, has indicated otherwise. In *Barker v. Barker,* the court refused to give retroactive effect to two decisions which substantially affected spouses' property rights at the time of divorce. 93 N.M. 198, 598 P.2d 1158 (1979). The court, in *Barker*, refused to apply retroactively *Hughes v. Hughes*, 91 N.M. 339, 573 P.2d 1194 (1978), which held that the husband's separate property acquired in Iowa was subject to the wife's equitable interest under Iowa law. More pertinent to our case, the *Barker* court also refused to give retroactive effect to its decision in *Copeland v. Copeland*, 91 N.M. 409, 575 P.2d 99 (1978), which held that even though the benefit had not yet matured, the husband's right to public employee pension funds was a vested property right, and was subject to a division in a divorce proceeding. Thus, if the purpose of *Copeland* would not be undercut by prospective application only, we see no reason why the purpose of *LeClert* would be frustrated by our refusal to apply the decision retroactively.

The last inquiry concerns the effect retroactive application might have on the ad-

88

ministration of justice. To hold that *LeClert* can be applied retroactively would mean that non-military spouses who were divorced before that decision in 1969, as with Norris here, could seek relief from final decrees entered more than sixteen years ago. In deciding that *McCarty* should not be given retroactive application, the supreme court in *Whenry* quoted favorably from *In re Marriage of Sheldon,* 124 Cal.App.3d 371, 380, 177 Cal.Rptr. 380, 384 (1981):

> Divorce inevitably requires old plans be abandoned, new plans made, and perceptions altered to conform to a changed reality. To permit and in fact encourage the relitigation of property interests long after the issues were supposedly settled would merely serve to re-open old wounds and create new ones. There is no guarantee that the non-service member spouse would have assets sufficient to reimburse the service member for that portion of the pension rights which had previously been an awarded share of community property. Substantial hardship would result in cases where the non-member relied on the property settlement in converting his or her share into non-liquid assets. Moreover, a reallocation of property interests would likely constitute sufficient "changed circumstances" to trigger a second round of relitigation involving spousal support awards [citations omitted]. We also note the immense burden on the administration of justice in our civil courts were such relitigation permitted [footnote omitted].

98 N.M. at 740, 652 P.2d at 1191. Although *Whenry* involved retroactive application of *McCarty* and *Espinda,* which precluded treatment of military retirement as community property, while the present case involves retroactive application of the rule recognizing military retirement as a community property, we believe the reasoning of *Whenry* applies.

Finally, it is worth noting that Arizona, where the parties were divorced and where Saueressig was a resident (as a result of his military status) at the time, did not recognize military retirement benefits as community property until 1977. *Van Loan v. Van Loan.* Moreover, of equal importance, both divisions of the Arizona Court of Appeals have held that *Van Loan* should not be applied retroactively. *Guffey v. LaChance,* 127 Ariz. 140, 618 P.2d 634 (Ct.App.1980); *Reed v. Reed,* 124 Ariz. 384, 604 P.2d 648 (Ct.App.1979). This might explain why, in 1965, the parties, each separately represented by counsel, did not consider the retirement benefits in the property settlement agreement.

Having reached this conclusion, we reverse the judgment awarding Norris a community interest in Saueressig's military retirement benefits. The parties shall bear their own costs of appeal.

IT IS SO ORDERED.

DONNELLY, C.J., and WOOD, J., concur.