776 P.2d 1244

Larry JESSEN and Michael McCoun,
Plaintiffs–Appellees,

v.

NATIONAL EXCESS INSURANCE COM-
PANY, a California corporation, and
Ruth K. Corbett, Individually, Defen-
dants–Appellants.

No. 17197.

Supreme Court of New Mexico.

June 22, 1989.

Rehearing Denied Aug. 8, 1989.

Civerolo, Hansen & Wolf, W.R. Logan, Albuquerque, for defendants-appellants.

Roy A. Anuskewicz, Jr., Turner W. Branch, Albuquerque, for plaintiffs-appellees.

## OPINION

RANSOM, Justice.

Seeking compensatory and punitive damages, Larry Jessen and Michael McCoun sued National Excess Insurance Company (National) for breach of contract and bad faith failure to pay a first-party claim. The jury returned a verdict in favor of Jessen and McCoun, awarding $25,000 compensatory and $75,000 punitive damages against National. The trial court awarded attorney fees and costs to Jessen and McCoun. National appeals. We affirm.

Jessen and McCoun first were covered as insureds by National when they rented a Cessna 310 airplane in February 1985. To be covered under the lessor's policy with National, Jessen was required to provide information about his experience as a pilot. By telephone, Jessen told Ruth Corbett, an agent for National, that he had a current medical certificate and approximately 1200 hours total flying time. After Jessen took a successful check ride in the Cessna 310, he and McCoun were added to the lessor's owner policy.

In March 1985, Jessen and McCoun decided to buy the Cessna 310. Jessen telephoned Corbett and told her that he and McCoun wanted to continue the same coverage the previous owners had under their National policy. The policy provided $25,-000 coverage for physical damage to the airplane. On April 1, Jessen went to Corbett's office, signed an application, and paid one-third of the first year's premium. Two days later, with McCoun as his passenger, Jessen crashed the airplane on take-off from a dirt airstrip at Ghost Ranch, New Mexico. Although Jessen and McCoun received only minor injuries, the airplane was destroyed. Jessen and McCoun took nothing with them from the airplane after it crashed; but within ninety minutes two Forest Service employees searched the airplane and retrieved a blue bag, which they left at the Ghost Ranch museum for safekeeping.

National hired an independent insurance adjuster, Bill McManaman, to investigate the accident. McManaman searched for but was unable to locate the pilot logbook, which Jessen claimed was in the blue bag at the time of the crash. The logbook contained the only single source verifying that Jessen had logged 1200 flight hours. It was never recovered.

Both Jessen and McCoun gave sworn statements about the circumstances of the crash. Jessen signed an Airman's Records Release authorizing McManaman to obtain copies of his records from the FAA. Jessen, through his attorney, also offered to give National an affidavit that the 1200 flight hours he stated in his application for insurance from National was an accurate representation of the hours recorded in the missing pilot's logbook.

On October 1, 1985, National offered to settle the claim for $11,000. Jessen and McCoun refused the settlement offer and, on December 27, 1985, filed this lawsuit against National.[1] When the case came to trial two years after the crash of the air-

---

1. Corbett was joined as a defendant under a negligence claim. There is no appeal from the jury's verdict in her favor.

plane, National still had neither denied nor paid Jessen and McCoun's claim.

The jury was instructed, to establish the claim of breach of contract, Jessen and McCoun had the burden of proving National failed to pay the claim as required by the terms of the policy and in deviation from acceptable standards of the insurance industry. The jury also was instructed, to establish the claim of bad faith,[2] Jessen and McCoun had the burden of proving National's failure to pay the claim within a reasonable period of time. Bad faith was defined as a refusal to pay or delay in paying the claim for frivolous or unfounded reasons. National does not contest the compensatory award in the amount of physical damage covered by the policy, to which plaintiffs limited their claim under both contract and tort. It argues, however, that the evidence did not warrant an instruction on punitive damages.

■ *Instruction on punitive damages not error.* Bad faith supports punitive damages upon a finding of entitlement to compensatory damages. *See United Nuclear Corp. v. Allendale Mut. Ins. Co.,* 103 N.M. 480, 485, 709 P.2d 649, 654 (1985). Arguably, if it is conceded that substantial evidence supported instructions on compensatory damages for bad faith, then it supported instructions on punitive damages for bad faith. Yet, here, punitive damages were sought exclusively for reckless or grossly negligent conduct, and we limit our considerations to evidence of such conduct. As we discuss below, if supported by substantial evidence, such conduct would justify an award of punitive damages under either the contract or tort claim. Further, under either contract or tort, as the court instructed the jury in this case, an insurer has a right to refuse a claim without exposure to punitive damages if it has a reason-able ground to believe a meritorious defense exists to the claim. *Id.; State Farm Gen. Ins. Co. v. Clifton,* 86 N.M. 757, 527 P.2d 798 (1974).

National argues it acted reasonably in delaying payment or denying the claim until it could verify Jessen had the 1200 hours of flight time as represented. We believe insofar as National argues it acted reasonably, it attempts to have this Court reweigh matters decided by the jury, and this we decline to do. *See Hort v. General Elec. Co.,* 92 N.M. 359, 588 P.2d 560 (Ct. App.1978), *cert. denied,* 92 N.M. 353, 588 P.2d 554 (1979); *Curtiss v. Aetna Life Ins. Co.,* 90 N.M. 105, 107, 560 P.2d 169, 171 (Ct.App.), *cert. denied,* 90 N.M. 7, 558 P.2d 619 (1976).

McManaman testified that, in the two years between the crash and trial, he spent only seventy hours investigating Jessen and McCoun's claim. Moreover, despite the fact McManaman knew of Jessen's previous flying experience and knew of potential sources of information that might have allowed him to verify the number of flight hours claimed, his check of such sources was incomplete. Additionally, while some of the sources he did check appeared to have been biased against Jessen, McManaman did not attempt to corroborate the information provided by these sources.

The jury also heard testimony from Mr. Wallace, vice president of the company that did the underwriting for National. Wallace testified that if Jessen had been able to produce the logbook of his flight time National probably would have paid the claim without question. Acknowledging that a pilot's logbook may often be lost or destroyed in a crash, Wallace testified National nonetheless believed it should not pay the claim until Jessen's flight experi-

---

**2.** This Court has recognized the tort of bad faith in an insurer's refusal to pay a first-party claim. *State Farm Gen'l Ins. Co. v. Clifton,* 86 N.M. 757, 759, 527 P.2d 798, 800 (1974). The claim for relief may be supported, *inter alia,* by evidence of any frivolous or unfounded refusal to pay or delay in paying the proceeds of the insurance contract. *Id.* However, adoption of the tort of insurance bad faith was not necessary to the *Clifton* decision because, as a matter of law, the insurance company's reasonable and proper actions to establish entitlement to the proceeds justified the time and measures taken. *See also Travelers Ins. Co. v. Montoya,* 90 N.M. 556, 566 P.2d 105 (Ct.App.1977); *Chavez v. Chenoweth,* 89 N.M. 423, 429, 553 P.2d 703, 709 (Ct.App. 1976) (claim for unreasonable delay in paying proceeds under an insurance contract stated a tort claim upon which relief could be granted).

ence was verified positively by McManaman. The plaintiffs' expert, Mr. Allen, countered that the conduct of National in delaying payment of the claim for two years pending the outcome of McManaman's investigation was not in keeping with accepted industry standards because it had "put an inappropriate and unduly harsh burden on the insured." Allen testified that McManaman's investigation methods had not produced results of sufficient reliability or conclusiveness to justify a denial of the claim. No misrepresentation by Jessen was established by the investigation, which amounted to no more than a failure to verify Jessen's claimed flying experience, to which Jessen testified in detail.

Given the evidence adduced at trial, we conclude the trial court correctly instructed the jury on the issue of punitive damages. *Cf. Curtiss*, 90 N.M. at 109, 560 P.2d at 173 (punitive damages properly awarded when insurer insisted plaintiff take physical examination before paying claim for medical expenses, knowing that plaintiff was unable to take examination due to heart attack out of which expenses arose); *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 620 P.2d 141, 169 Cal.Rptr. 691 (1979) (inadequate investigation supported award of punitive damages).

In New Mexico, punitive damages have been awarded for breach of contract when the defendant's conduct was malicious, fraudulent, oppressive, or committed recklessly with a wanton disregard for the plaintiff's rights. *Green Tree Acceptance, Inc. v. Layton*, 108 N.M. 171, 173, 769 P.2d 84, 86 (1989) (quoting *Hood v. Fulkerson*, 102 N.M. 677, 680, 699 P.2d 608, 611 (1985)); *see also Clifton; Curtiss*. In an appropriate case, punitive damages may also be awarded when the defendant's conduct was grossly negligent. *Valdez v. Cillessen & Son, Inc.*, 105 N.M. 575, 734 P.2d 1258 (1987) (personal injury); *Valdez v. Warner*, 106 N.M. 305, 742 P.2d 517 (Ct. App.), *cert. quashed*, 106 N.M. 353, 742 P.2d 1058 (1987) (negligent employment); *see generally*, J. McCarthy, *Punitive Damages in Bad Faith Cases* § 1.51 (4th ed. 1987) (award of punitive damages in bad faith cases depends on jurisdiction's general standard for such award). The words describing culpable conduct are to be taken in the disjunctive; if, for example, a defendant acts recklessly, it is unnecessary to show intentional misconduct. *Green Tree Acceptance*. The Uniform Jury Instructions provide that the appropriate language should be selected as supported by the evidence. SCRA 1986, 13–1827.

■ Whether under a theory of contract or tort, we believe submission of the issue of punitive damages on language of either gross negligence or reckless disregard for the interests of the insured is especially appropriate when, as here, the evidence shows the insurer utterly failed to exercise care for the interests of the insured in denying or delaying payment on an insurance policy. Here, pursuant to the Uniform Jury Instructions, the jury also was instructed that the limited purpose of punitive damages is to punish wrongdoers and dissuade similar conduct in the future, that it must take into account any aggravating and mitigating circumstances, and that an award must be rationally related to the nature of the wrong committed. *See* SCRA 1986, 13–1827. The instructions on punitive damages were proper.

■ *Instruction as to standard of proof not grounds for reversal.* National argues this Court either already has or should adopt the clear and convincing standard of proof for the award of punitive damages, citing *Allendale*. We disagree. In *Allendale*, the four justices sitting on the panel agreed the preponderance of the evidence standard was appropriate. 103 N.M. at 484, 497, 709 P.2d at 653, 666. Judge Bivins, sitting by designation on the panel, concluded it was unnecessary to reach the standard of proof issue since, in his opinion, the evidence failed to support the award of punitive damages under the lesser standard of preponderance of the evidence. *Id.* at 495, 709 P.2d at 664. National points out that other jurisdictions have adopted the clear and convincing evidence standard. *See, e.g., Linthicum v. Nationwide Life Ins. Co.*, 150 Ariz. 326,

723 P.2d 675 (1986); *Travelers Indem. Co. v. Armstrong*, 442 N.E.2d 349 (Ind.1982); *Wangen v. Ford Motor Co.*, 97 Wis.2d 260, 294 N.W.2d 437 (1980). Notwithstanding, we are not inclined to readdress the *Allendale* Court's resolution of this issue, nor would we apply a different rule to the plaintiffs in this case, who justifiably relied on the *Allendale* standard. *See Norris v. Saueressig*, 104 N.M. 85, 87, 717 P.2d 61, 63 (Ct.App.1985), *aff'd*, 104 N.M. 76, 717 P.2d 52 (1986).

Here, the trial court instructed the jury that in order to award punitive damages it had to find more than a preponderance of the evidence in favor of Jessen and McCoun. If this instruction was erroneous, the error worked to the favor of National and does not form a basis for reversal.

*National not absolved of liability because an independent contractor performed the actual investigation.* National argues the only reckless or grossly negligent acts alleged in this case were those of McManaman, and punitive damages cannot be assessed against National for the acts of McManaman because he was an independent contractor and because no evidence was presented that someone in an executive capacity at National ratified his acts. For the reasons discussed below, we disagree with this analysis.

■ Although one generally is not liable for the conduct of an independent contractor, *see Cillessen & Son*, 105 N.M. at 578, 734 P.2d at 1261, this Court noted in *Budagher v. Amrep Corp.*, 97 N.M. 116, 121, 637 P.2d 547, 552 (1981), (quoting *Pendergrass v. Lovelace*, 57 N.M. 661, 663, 262 P.2d 231, 232 (1953)), *appeal after remand*, 100 N.M. 167, 667 P.2d 972 (Ct. App.), *cert. denied*, 100 N.M. 192, 668 P.2d 308 (1983):

> One who owes * * * an absolute and positive duty to the public or an individual cannot escape the responsibility * * * by delegating it to an independent contractor * * * whether [the duty] is imposed by the common law, by statute, or by municipal ordinance * * *.

(Brackets in original.) *See also Clear v. Patterson*, 80 N.M. 654, 459 P.2d 358 (Ct. App.1969) (when contract imposes duty, party may delegate work to independent contractor but cannot thereby escape responsibility for results). The duty of good faith dealing by parties to an insurance contract has been recognized as a nondelegable duty, breach of which supports the award of punitive damages. *Timmons v. Royal Globe Ins. Co.*, 653 P.2d 907 (Okla. 1982). The duty of the insurance company includes "a duty to the insured to make a reasonably prompt investigation of all relevant facts * * *. And, if the insurance company cannot give its insured a valid reason for denying the claim, it has a final duty to promptly honor it." *Bankers Life & Cas. Co. v. Crenshaw*, 483 So.2d 254, 276 (Miss.1985), *aff'd* 486 U.S. 71, 108 S.Ct. 1645, 100 L.Ed.2d 62 (1988); *see also Mize v. Harford Ins. Co.*, 567 F.Supp. 550 (W.D. Va.1982); J. McCarthy, *Punitive Damages in Bad Faith Cases* § 1.11 (4th ed. 1987). We hold National was not relieved of liability because McManaman was an independent contractor.

The trial court instructed the jury it could award punitive damages if National authorized, participated in, or ratified the acts of McManaman, *see Samedan Oil Corp. v. Neeld*, 91 N.M. 599, 577 P.2d 1245 (1978); SCRA 1986, 13–1826, or if the acts of National were themselves grossly negligent or committed with reckless disregard for the rights of Jessen and McCoun. National did not object to the instructions on the grounds of insufficient evidence of authorization or participation; consequently, we do not discuss the propriety of instructing the jury on authorization or participation.

■ For two years, National relied on the inconclusive results of McManaman's investigation as the reason for delaying payment on Jessen and McCoun's claim. We believe the jury properly could find this was an independent wrongful act. The jury also properly could have found this act grossly negligent or committed with reckless disregard for the interests of the insured.

■ Alternatively, this same evidence provides adequate support for a finding of ratification. *See North v. Public Serv. Co. of N.M.*, 97 N.M. 406, 640 P.2d 512 (Ct.App. 1982) (question of fact precluded summary judgment as to whether employer ratified conduct that was sufficient to support award of punitive damages when employer relied on allegedly wrongful acts of employees as basis for claim against plaintiff), *modified*, 101 N.M. 222, 680 P.2d 603 (Ct. App.1983), *cert. denied*, 101 N.M. 11, 677 P.2d 624 (1984). Ratification requires either knowledge of the material facts or circumstances sufficient to put a reasonable person on notice to inquire into these facts. *See–Tee Mining Corp. v. National Sales, Inc.*, 76 N.M. 677, 417 P.2d 810 (1966). Ratification may be implied by acquiescence in the results of an unauthorized act, *id.* at 681, 417 P.2d at 812, or by retention of the benefits of this act. *Morris Oil Co. v. Rainbow Oilfield Trucking, Inc.*, 106 N.M. 237, 741 P.2d 840 (Ct.App. 1987). Here, those officers of National with the authority to deny or honor the claim of Jessen and McCoun delayed payment because, and knowing that, McManaman had neither verified nor disproved Jessen's stated flight experience. From this evidence, uncontroverted by National, the jury properly could find National ratified the conduct of McManaman.

*Refusal to instruct jury on comparative bad faith not error.* National argues the trial court should have instructed the jury on the comparative fault of Jessen and McCoun since the jury was instructed on the law regarding misrepresentations made by an insured on an application for insurance. To support its contentions, National cites *Bartlett v. New Mexico Welding Supply, Inc.*, 98 N.M. 152, 646 P.2d 579 (Ct. App.), *cert. denied*, 98 N.M. 336, 648 P.2d 794 (1982), and related New Mexico comparative negligence cases, as well as *California Casualty General Insurance Co. v. Superior Court*, 173 Cal.App.3d 274, 218 Cal.Rptr. 817 (1985) (comparative fault applies in bad faith claims). We do not decide whether such an instruction necessarily would be inappropriate in another case. Here, we hold there was no need to so instruct the jury. National alleged misrepresentation or fraud on the part of Jessen in reporting his flight experience when applying for insurance. Without our passing upon the sufficiency of evidence, we note that the trial court allowed the issue of misrepresentation to go to the jury and that such conduct, had it been demonstrated to the satisfaction of the jury, would have vitiated the insurance policy. In short, this defense would have barred completely the recovery of compensatory and, hence, punitive damages. The jury clearly found no such misrepresentation was made. No evidence was presented in this case to demonstrate Jessen and McCoun failed to cooperate with the investigation or otherwise acted in a manner indicative of bad faith conduct under a valid insurance contract. Therefore, the refusal of National's requested special verdict was not error.

■ *Award of attorney fees proper.* National argues that it was improper for the trial court to award attorney fees and costs to the plaintiffs in light of NMSA 1978, Section 39-2-1, which, according to National, precludes the award of attorney fees and costs absent a finding by the trial court that the insurer acted unreasonably in failing to pay the claim. *See Allendale*, 103 N.M. at 495, 709 P.2d at 664, *see also Suggs v. State Farm Fire & Cas. Co.*, 833 F.2d 883, 893 (10th Cir.1987), *cert. denied*, — U.S. ——, 108 S.Ct. 1732, 100 L.Ed.2d 196 (1988).

In the instant case, the jury awarded both actual and punitive damages. On the issue of punitive damages, the court instructed the jury that, before it could award such damages, it had to find National was reckless or grossly negligent in its failure to pay the claim of Jessen and McCoun. The punitive damages award thus implies a finding of unreasonableness since unreasonable tortious action is subsumed under the more egregious standards of recklessness or gross negligence and the trial court instructed the jury that reasonableness was a defense to punitive damages. The award of attorney fees is discretionary with the trial court and will not be disturbed absent abuse of discretion.

*Keeth Gas Co. v. Jackson Creek Cattle Co.,* 91 N.M. 87, 570 P.2d 918 (1977). Based on the implied finding of unreasonableness, the trial court did not abuse its discretion in awarding attorney fees and costs to the appellees in this action.

■ Section 39-2-1 does not limit an award of attorney fees and costs only to trial. In the appropriate case, a first party insured who prevails on appeal may be awarded reasonable attorney fees and costs for the appeal. *See Stock v. ADCO Gen'l Corp.,* 96 N.M. 544, 549, 632 P.2d 1182, 1187 (Ct.App.), *cert. denied,* 96 N.M. 543, 632 P.2d 1181 (1981). We conclude Jessen and McCoun should be awarded reasonable attorney fees and costs for this appeal.

The judgment rendered by the district court is affirmed, and the cause remanded to the district court solely to determine reasonable attorney fees and costs for Jessen and McCoun on appeal and to amend the judgment accordingly.

IT IS SO ORDERED.

SOSA, C.J., and APODACA, J., Court of Appeals, concur.

SCARBOROUGH, J. (dissents).

SCARBOROUGH, Justice, dissenting.

The award of $50,000 punitive damages in this case, affirmed by the majority, must fail for a number of reasons. In making its award, the jury was instructed to rely on a negligence standard that is overbroad and an evidence standard that is insufficient.

The negligent failure of an insurer to conclude a claim investigation can subject the insurer to a claim for compensatory damages. Punitive damages depend on the nature of a defendant's mental state and are not recoverable if a defendant's conduct is merely negligent. *See Tuttle v. Raymond,* 494 A.2d 1353, 1360 (Me.1985); W. Prosser, *Handbook on the Law of Torts* § 2, at 9–10 (4th ed. 1971). In the case before us the trial court determined that the conduct of a defendant insurer was not malicious or fraudulent. Such a determination by a trial court should remove the issue of punitive damages from jury consideration.

The current New Mexico jury instructions on punitive damage awards, SCRA 1986, 13–1827, are confusing to judges and jurors alike. A jury is instructed to award punitive damages if it finds "the acts of defendant were [willful, wanton, malicious, reckless, grossly negligent, fraudulent and in bad faith]." SCRA 1986, 13–1827. In "Directions for Use", the jury is told: "Bracketed words should be selected as supported by the evidence." *Id.* These instructions are poorly drafted and invite misunderstanding. In this regard, I agree with the Arizona court in *Linthicum v. Nationwide Life Ins. Co.,* 150 Ariz. 326, 723 P.2d 675, 680 (1986):

> Having juries decide whether to award compensatory vs. punitive damages based on vague verbal· distinctions between mere negligence, gross negligence and reckless indifference often futile and nothing more than semantic jousting by opposing attorneys. Further, it leads to misapplication of the extraordinary civil remedy of punitive damages which should be appropriately restricted to only the most egregious of wrongs.

Whether "gross" or "reckless," a negligence standard for punitive damages is overbroad. *Contra Loucks v. Albuquerque Nat'l Bank,* 76 N.M. 735, 418 P.2d 191 (1966). I agree with the Supreme Judicial Court of Maine that a "gross" negligence standard is too broad and vague and can result in unfair and inefficient punitive damages awards. *Tuttle,* 494 A.2d at 1361. Likewise, a "reckless" negligence standard can "allow virtually limitless imposition of punitive damages." *Id.* Instead, there should be a more narrow focus on a defendant's mental state rather than on outward conduct. D. Dobbs, *Handbook on the Law of Remedies* § 3.9, 205 (1973); *Gurule v. Illinois Mutual Life and Casualty Co.,* 152 Ariz. 600, 734 P.2d 85 (1987); *Linthicum v. Nationwide Life Ins. Co.,* 150 Ariz. 326, 723 P.2d 675 (1986).

The decision of whether to award punitive damages should turn upon a defen-

dant's state of mind. *Gurule*, 152 Ariz. at 602, 734 P.2d at 87. A defendant must have been "consciously aware of the wrongfulness or harmfulness of his conduct ... in deliberate contravention to the rights" of a plaintiff before punitive damages can be awarded. *Linthicum*, 150 Ariz. at 326, 723 P.2d at 679. If a defendant did not act with what the Arizona Supreme Court has described as an "evil mind", a plaintiff can be awarded compensatory damages but not punitive damages. The requisite "evil mind" can be established by evidence that a defendant, acting with a knowing, culpable mind: (1) intended to injure a plaintiff or (2) consciously pursued a course of conduct despite knowing it created a substantial risk of significant harm to a plaintiff.

Bad faith alone by a plaintiff can sustain a compensatory damages award. Punitive damages, however, should not be awarded "unless there is something more than the conduct required to establish the tort." *Id.* at 332, 723 P.2d at 681. *Contra, Boudar v. E.G. & G., Inc.*, 106 N.M. 279, 742 P.2d 491, (1987). "[I]n bad faith cases, unless the evidence established that, in addition to bad faith, defendant acted with an evil mind, punitive damages are unnecessary because compensatory damages adequately deter." *Gurule*, 152 Ariz. at 601, 734 P.2d at 86.

Awarding punitive damages primarily furthers the same objectives which underlie criminal law. *Id.* Negligence alone cannot support awards of punitive damages because of their quasi-criminal nature. The purpose of punitive damages is not to compensate the plaintiff, but to punish the defendant and to deter "conduct involving some element of outrage similar to that usually found in crime." *Restatement (Second) of Torts*, § 908 Comment b (1979); *see also* W. Prosser, *Handbook on the Law of Torts* § 2, at 9 (4th ed. 1971).

Recently there has been considerable national debate over punitive damages

awards in civil cases. *Annotation, Standard of Proof As to Conduct Underlying Punitive Damage Awards—Modern Status*, 58 A.L.R. 4th 878 (1987). Challenges to punitive damages usually focus on whether they violate: (1) the eighth amendment prohibition against excessive fines [1] or (2) the fifth and fourteenth amendments due process guarantees. 5 M. Minzer, J. Nates, C. Kimball, D. Axelrod & R. Goldstein, *Damages in Tort Action*, § 40.15[1]–[3] (1988). Punitive damages awards are similar to criminal convictions, and defendants should be accorded procedural safeguards similar to those in criminal cases, including a burden of proof higher than the civil standard. *Id.* at § 40.15[1]; *see also* J. Ghiardi & J. Kircher, *Punitive Damages Law and Practice*, § 3.03 (1984).

We currently allow a punitive damages award if a plaintiff can meet a preponderance of the evidence burden of proof. *United Nuclear Corp. v. Allendale Mutual Ins.*, 103 N.M. 480, 485, 709 P.2d 649, 654 (1985). I believe a greater burden of proof should be required whereby a plaintiff can recover compensatory damages upon proof by a preponderance of the evidence but can be awarded punitive damages only upon proof by clear and convincing evidence. *E.g., Linthicum*, 150 Ariz. 326, 723 P.2d 675 (1986); *Tuttle v. Raymond*, 494 A.2d 1353 (Me.1985); *Wangen v. Ford Motor Co.*, 97 Wis.2d 260, 294 N.W.2d, 437. Before awarding punitive damages a factfinder would thus be required to find there was clear and convincing evidence a defendant acted fraudulently, or with malicious intent as construed in *Curtiss v. Aetna Life Ins. Co.*, 90 N.M. 105, 560 P.2d 169 (Ct.App.), *cert. denied*, 90 N.M. 7, 558 P.2d 619 (1976).

For the reasons set forth, I dissent from the majority opinion.

---

**1.** See Massey, The Excessive Fines Clause and Punitive Damages: Some Lessons From History, 40 Vand.L.Rev. 1234 (1987); Jeffries, A Comment on the Constitutionality of Punitive Damages, 72 Va.L.Rev. 139 (1986); The Constitutional Case for Reforming Punitive Damages Procedures, 69 Va.L.Rev. 269 (1983).